No. 58,156

THE MCCALL PATTERN COMPANY, *Appellee*, v. STATE OF KANSAS
EMPLOYMENT SECURITY BOARD OF REVIEW, *et al., Appellant.*
(712 P.2d 1266)

Opinion filed January 17, 1986.

*Marlin A. White*, of Kansas Employment Security Board of Review, argued the cause, and *Jeanette S. Bertelson*, of the same agency, was with him on the brief for appellant.

*Stuart H. Bompey*, of Baer Marks & Upham, of New York, New York, argued the cause, and *Barry N. Saltzman*, of the same firm, and *Joseph A. Knopp*, of Everett, Seaton & Knopp, of Manhattan, were with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: This is an appeal by the Kansas Employment Security Board of Review (Board) from a judgment of the district court denying unemployment benefits to certain permanent part-time employees of the McCall Pattern Company. The examiner had previously found the employees eligible for such benefits and the awards had been affirmed by the referee and then the Board.

We shall first state the proper scope of review. K.S.A. 1984 Supp. 44-709(i)(5) provides:

"In any judicial proceeding under this section, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of the court shall be confined to questions of law. Such proceeding, and the questions of law certified, shall be heard in a summary manner and shall be given precedence over all other civil cases except cases arising under the workmen's compensation act."

In *Townsend v. Kansas Employment Security Board of Review*, 218 Kan. 306, 543 P.2d 888 (1975), an earlier form of K.S.A.

1984 Supp. 44-709(i)(5) (the difference being insignificant) was discussed as follows:

"We have previously examined the scope of review provided by this statute. In *Pickman v. Weltmer*, 191 Kan. 543, 382 P.2d 298 [1963], it is held:

" 'Where a claimant seeks judicial review for unemployment compensation benefits, findings of fact of the Employment Security Board of Review are conclusive and may not be set aside by the district court in the absence of fraud where they are supported by evidence, and the jurisdiction of the court is confined to questions of law.' (Syl. ¶ 3.)" 218 Kan. at 311.

See also *Strader v. Kansas Public Employees Retirement System*, 206 Kan. 392, 479 P.2d 860, *cert. denied* 403 U.S. 914 (1971); *Boeing Co. v. Kansas Employment Security Board of Review*, 193 Kan. 287, 392 P.2d 904 (1964); *Chadwick v. Employment Security Board of Review*, 192 Kan. 769, 771, 390 P.2d 1017 (1964); *Clark v. Board of Review Employment Security Division*, 187 Kan. 695, 700, 359 P.2d 856 (1961); *Read v. Warkentin, Commissioner*, 185 Kan. 287, 290, 341 P.2d 980 (1959).

The exact procedural routing of the various claims through the administrative agency is confusing, and nothing would be gained by a recital thereof in this opinion. One of the difficulties lies in the fact that the case of each claimant was considered individually until it reached the level of the Board, but all cases were considered collectively by the Board and on judicial appeal. The decision of the Board (entered in each case), in its totality, is as follows:

"Now on this 30th day of March 1984, the above-entitled matter comes on for consideration by the Board of Review. After examination of the case, the Board determines to decide the matter on the record.

"The majority of the Board, after reviewing all the evidence and being fully advised in the matter, adopts the findings of fact and decision of the Referee rendered in this matter as though fully incorporated herein, and finds that the decision of the Referee should be affirmed.

"IT IS THEREFORE CONSIDERED, ORDERED, AND ADJUDGED that the decision of the Referee rendered in the above-entitled matter should be and is hereby affirmed."

As a result, there appears to be no one decision of the Board, or of the referee, stating the findings of fact collectively—yet the appeal before us presents issues on the basis of the claimants as being a class of employees, and their claims to entitlement benefits are based upon the nature of the work performed by the class. Therefore, the findings of fact of the administrative agency, upon which review is sought, go to particular facts of days

worked, etc., by particular claimants while the opinion of the district court and the issues before us concern the claimants as a class of employees. The posture of the appeal compels us to view the facts relative to the class or category of the claimants rather than the specific facts relative to any particular claimant. Fortunately, the facts relative to the class, or individual claimants therein, are not in dispute and are well summarized by the district court in its memorandum decision, as follows:

"1. Plaintiff is a business entity, incorporated in the State of Delaware, engaged in the manufacture, sale and distribution of home sewing patterns throughout the United States. Its principal manufacturing and distribution facility is located in Manhattan, Pottawatomie County, Kansas.

"2. The individual defendant-claimants are employees of McCall who have claimed benefits under the law during the months of November and December, 1983. McCall employs approximately fifty persons who are classified as 'permanent part-time employees.' All individual claimants involved in this matter fall within that company classification.

"3. During the period of early December, 1983, an Examiner for the Department of Human Resources initially determined pursuant to KSA 44-709(b) and 44-710(c) that claimants were entitled to benefits under the law and that McCall's experience rating account should be charged for such benefits because the claimants were separated from their work, 'due to a reduction in force', or 'due to a lack of work.'

"4. Thereafter, on or about December 16, 1983, McCall timely appealed the Examiner's determinations as to each claimant. The appeals were heard by Referee Preston Gates pursuant to KSA 44-709 (c)-(e) on or about January 19, 1984, who subsequently affirmed the determinations of the Examiner.

"5. On or about February 15, 1984, McCall timely appealed each determination of the Referee, to the Board of Review pursuant to KSA 44-709(f). These appeals were consolidated for determination by the Board which, in a split decision by two of its three members, affirmed the decisions of the referee. This appeal followed.

"6. As permanent part-time employees of McCall, each claimant was hired to work on a schedule of regular hours, 8 to 10 working days of each month, except in the months of May and November, of each year. Claimants have a regular work schedule during each 12 month period, and can sign up for extra work within the company for additional pay when extra work is available. Their respective work schedules were made known to them at the time they were hired. It was also made known to each of them that there would be no regularly scheduled work during the two months noted of each year.

"7. Each claimant works in the distribution section of the company. In the months of May and November, the company does not send out an issue or distribute its product so there is no scheduled work in those months in that section of the company's operations. There may be work available in other sections of the company during those months, and any permanent part-time

employee can sign for same. Such work would constitute 'extra work' as discussed in the preceding paragraph.

"8. There was no evidence presented to the Board by the claimants that they availed themselves of the opportunity for extra work. There was no evidence presented by claimants that if they did sign for extra work within the company, none was offered to them during the periods for which they claim benefits.

"9. At all times, permanent part-time employees enjoy the same company fringe benefits offered the company's regular full-time employees.

"10. During what the company refers to as 'non-scheduled' work days (days off) permanent part-time employees are subject to call by McCall and must report for work, if called, on one hour's notice. At no time during the year is there a termination of the employer-employee relationship between McCall and its permanent part-time employees."

The primary issues before us are solely questions of law—whether the Board correctly applied the law to the facts in determining the claimants were eligible for unemployment benefits. The linchpin issue is whether or not the claimants were involuntarily unemployed during the months of November and May.

In reversing the Board's two-to-one decision, the district court reasoned as follows:

"This action stems from application by the claimant-defendants for benefits under the Employment Security Law, KSA 44-701, et seq. KSA 44-702 provides in part as follows:

KSA 44-702. . . . . 'As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity, due to unemployment, is a serious menace to health, morals and welfare of the people of this state. INVOLUNTARY UNEMPLOYMENT is therefore a subject of general interest and concern . . . . The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment . . . .'

The Court believes the controlling issue herein is whether or not the claimants were involuntarily unemployed during the periods for which they have made claim to benefits.

"In *Clark v. Board of Review Employment Security Division*, [187 Kan. 695, 359 P.2d 856 (1961)], the Court explains at page 698, 'the basic concept of the Act, and declared to be the public policy of the state, is to protect against INVOLUNTARY UNEMPLOYMENT—that is, to provide benefits for those who are unemployed through no fault of their own and who are willing, anxious and ready to support themselves and their families, and who are unemployed because of conditions over which they have no control . . . .' The Court adds that 'an unemployed person shall be eligible to receive benefits ONLY if it is found that he is able to work, is available for work, and is making reasonable efforts to obtain work.'

" 'Involuntary' means without will or power of choice. Black's Law Dictionary, 5th Ed. As to the instant case, the claimants' unemployment must therefore

have been without choice, or as stated in the *Clark* case, supra, because of conditions over which they had no control. The burden of proof is upon the claimants to establish they were 'involuntarily' unemployed because of conditions over which they had no control.

"The record reflects that the claimants herein accepted the conditions of their employment knowing precisely what their work schedule would be and that there would be no regularly scheduled work for the periods for which they claim benefits. Further, said claimants accepted employment with McCall's on a permanent or 'regular' part-time basis knowing that while there were to be non-scheduled work periods in May and November each year, there would not be any termination of the employer-employee relationship they enjoy with McCall. Thus, they accepted regular part-time employment which was systematic, not subject to unexplained or irrational variations, and which was to be performed in a method in accordance with established rule or practice within the company.

"It is neither consistent nor logical on the one hand to knowingly and voluntarily accept a stable part-time work arrangement such as the claimants enjoy and on the other hand to claim they are 'involuntarily' unemployed during the periods of time they knew there would be no work scheduled, and for which they now claim benefits. If the term 'involuntary unemployment' is to have substantive application in this case, as it must, it seems to me that the 'conditions' referred to in the *Clark* opinion, supra, must include the conditions made known to the claimants at the time they accepted their employment, namely, there would be no scheduled work in the months of May and November. Consequently, claimants had control over that condition of their employment as they were free to refuse the job and continue their search for employment under conditions acceptable to them. By accepting employment with McCall, it seems to me that each of them freely chose the condition of no scheduled work during the times in question and as a matter of law it cannot now be made the basis of a claim of involuntary unemployment."

The factual situation in the claimants' employment does not fit into the usual categories of employment. The claimants are not seasonal or temporary employees. Each claimant remains a permanent employee of McCall throughout the calendar year. Each claimant has eight to ten work days each month and often is called to work on "unscheduled" days. All claimants are on call to work unscheduled days, including those during the months of November and May.

The claimants were fully informed of the unusual employment requirements before becoming permanent part-time employees of McCall. Although not critical to the determination of the issues herein, it is interesting each claimant has been offered permanent full-time employment with McCall but has declined such permanent employment in favor of the permanent part-time employment. For various reasons, such as family obligations or

simply personal preference, an individual may prefer permanent part-time employment to permanent full-time employment. Such is the right of choice of individuals.

Under the unique factual circumstances presented herein, we agree with the district court's determination that the claimants herein were not involuntarily unemployed as contemplated by the Kansas employment security law (K.S.A. 44-701 *et seq.*), and, hence, were not entitled to receive benefits thereunder.

By virtue of the result reached on this issue, other issues raised need not be addressed.

The judgment is affirmed.