(835 P.2d 699)

No. 67,454

In the Matter of the Protest of Spangles, Inc., for Refund of Taxes Paid in Sedgwick County, Kansas. Docket No. 88-2500-PR.

Opinion filed August 7, 1992.

*David J. Wood,* of Dresie, Jorgensen & Wood, P.A., of Wichita, for appellant/cross-appellee Spangles, Inc.

*John C. Roberts,* assistant county counselor, for appellee/cross-appellant Sedgwick County.

Before BRAZIL, P.J., ELLIOTT and PIERRON, JJ.

ELLIOTT, J.: In this case, the Kansas Board of Tax Appeals (BOTA) denied a protest and application for refund by Spangles, Inc., (Spangles) for taxes on building improvements which were assessed and levied separate from those on the underlying land. Spangles appeals the district court's order affirming BOTA's order, and Sedgwick County cross-appeals.

We reverse the decision of the district court; the cross-appeal is moot.

The case was submitted on stipulated facts.

The property in question was owned by the Walkers, who executed a 60-year lease to Homer Mosley in 1960. The leasehold estate was assigned to numerous successive parties. The building on the land was initially used as an office for an adjacent motel, and then as a restaurant.

In December 1985, Spangles purchased the leasehold and converted the building to a Spangles restaurant. The tax key numbers for the land described in the lease are B-8969 and B-8977; the taxes on these key numbers are charged to the Walker Revocable Trusts. Those taxes have been fully paid for the period involved in this action.

Shortly after taking possession of the property, Spangles was informed by the County that the property had been placed in tax foreclosure status for delinquent taxes for 1981 through 1985. The property was identified as key number BLG-00186, "Building Situated on Pt. of Key #B-8969 and B-8977." "BLG" numbers identify improvements on leased land which are taxed separately from the underlying land.

Spangles paid the taxes and filed a protest and application for refund with BOTA, alleging that assessing taxes on improvements separately from the underlying land is contrary to statute. BOTA found the County complied with the statutory scheme for levying and assessing taxes and denied Spangles' application.

The district court affirmed BOTA's order with one modification: the taxes on BLG-00186 for 1981 should have been assessed as personal property taxes in accordance with K.S.A. 79-328 (repealed L. 1981 ch. 371 § 1).

Since the facts are not disputed, and the decision turns on BOTA's interpretation of relevant statutes, the appellate scope of review is plenary. See *Amoco Production Co. v. Armold*, 213 Kan. 636, Syl. ¶¶ 4-5, 518 P.2d 453 (1974).

In 1981, after the repeal of K.S.A. 79-328, improvements on leased property were moved from personal property tax rolls to the real estate rolls. Sedgwick County assigned separate BLG numbers to the improvements rather than posting them to the standard key numbers corresponding to the underlying land.

Under the County's system, a person seeking tax information must go to the county clerk's office with a legal description of the land. The clerk looks at the assessment rolls for the appropriate key number, which then must be taken to the treasurer's office, which will check the tax rolls for the key number and record the taxes for that tract of real estate.

BLG numbers may also be obtained from the clerk's office, *but only if* they are specifically requested and the inquirer gives

an approximate address of the correct street. When the BLG number is obtained, the treasurer's office can determine the tax on improvements by consulting *a separate tax roll book*. The only county office which cross-references key numbers and BLG numbers is the appraiser's office. The clerk's office does have access to the cross-referenced appraisal records by computer, but does not routinely seek or volunteer the information.

The assessment rolls for 1981-1985 identify the owner of BLG-00186 as Shepherd of the Hills Motel. The land valuation is listed at zero and the total valuation of the property equal to the value of the improvements. On the other hand, the assessment rolls on key numbers B-8969 and B-8977 show no value for the improvements and show the total value to be equal to the land valuation.

Our taxation act defines "real estate" and "land" as including all buildings, fixtures, and improvements. K.S.A. 79-102. Further, although land and improvements are to be valued separately, the values of both must be entered on the assessment rolls in a single aggregate. K.S.A. 79-412.

Spangles argues that recording the assessments on separate tax rolls under different key numbers does not constitute a "single aggregate." We agree.

The statutory scheme provides that the clerk's office prepares the assessment roll, which must contain the legal description of the land, identified by a key number. This assessment roll is transmitted to the appraiser. K.S.A. 79-408, K.S.A. 79-1469.

The appraiser assigns a fair market value to the tract of land represented by each key number. See K.S.A. 79-411, K.S.A. 79-1469. Because the criteria for valuing land and improvements differ, the market values must be determined separately—but they may be recorded separately or jointly in the appraiser's records. See K.S.A. 79-1459. After determining value, the appraiser classifies the property to determine the percentage of value subject to taxation. K.S.A. 79-1439, K.S.A. 79-1459. The appraiser's records, known as the appraisal roll, are then transferred to the county clerk. See K.S.A. 79-1459(d), K.S.A. 79-1466, K.S.A. 79-1469.

The clerk submits the appraised values to the Board of Equalization for certification. K.S.A. 79-1602. The clerk makes any

necessary changes in valuation, computes the final tax levy rate for the tract of real estate, and submits the resulting tax roll to the treasurer's office for collection. K.S.A. 79-1803.

BOTA relied on K.S.A. 79-1459 to legitimize the county's procedures. That statute details procedures for the preparation of the appraisal records. K.S.A. 79-1459(d) states that, if advisable, the appraiser may "combine the land appraisal record and the improvements appraisal record."

BOTA then reasoned that because the appraiser's evaluations are transferred to the clerk's office, the clerk has the same discretion as the appraiser to enter the valuations in one record or two. BOTA finally concluded that the fact K.S.A. 79-1459 concerns appraisals and K.S.A. 79-412 concerns assessments is a distinction without a difference.

BOTA was correct that the appraisal roll and assessment roll contain similar information. But for BOTA's interpretation of the relevant statutes to be correct, there must truly be no substantive difference between appraisal of property and assessment of taxes. This is simply not the case.

We hold that BOTA's reliance on K.S.A. 79-1459(d) to justify the separate assessment of improvements on leased land is contrary to the inherent differences in appraisal and assessment.

The function of the appraiser's office is to determine the fair market value of each tract of real estate. The county clerk, on the other hand, utilizes the assessed values and calculates the final tax owed by each property owner. The plain language of K.S.A. 79-412 mandates that the values for improvements and land be entered on the assessment rolls in a single aggregate. When complied with, the result is a single tax levy for each tract of real estate, including improvements—a result in line with the ultimate purpose of the taxation act. See *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, 591, 701 P.2d 1314 (1985); K.S.A. 79-102.

Keeping a separate volume for BLG properties, with no cross-referencing system to the 74 volumes containing the remaining real estate assessments for Sedgwick County, does not comply with the clear directive of K.S.A. 79-412 to list assessment values for land and improvements in a single aggregate.

BOTA erred by equating appraisal with assessment. Because of this ruling, the County's cross-appeal is moot.

The trial court's judgment is reversed. The cross-appeal is deemed moot.