PHELPS COUNTY, NEBRASKA, APPELLEE, V. DR. PAUL E. ANDERSON ET AL., APPELLEES, AND ROBERT E. WINKLER ET AL., APPELLANTS.

508 N.W.2d 314

Filed November 16, 1993.   No. A-92-265.

Robert A. Ide, of Aten, Noble & Ide, for appellants.

Rebecca E. Miller, Phelps County Attorney, for appellee Phelps County.

CONNOLLY, IRWIN, and WRIGHT, Judges.

IRWIN, Judge.

Appellee Phelps County, Nebraska, brought this action in the district court for Phelps County to foreclose real estate tax liens upon real estate alleged to belong to the appellants, Robert E. Winkler, Suzanne Winkler, and First National Bank of Holdrege. Trial to the court was held on October 11, 1991. The court found in favor of the county and entered a decree of foreclosure on February 6, 1992. For the reasons set forth below, we affirm.

## FACTUAL BACKGROUND

In 1970, Robert E. Winkler and James R. Collison purchased land in Holdrege, Nebraska, referred to as parcels Nos. 2764.02, 2764.03, 2764.05, and 2764.06. Between 1970 and 1980, mobile homes located on these parcels were taxed as personal property. In June 1980, Collison requested the Phelps County assessor to list the mobile homes located on these parcels as improvements to the real estate. The assessor complied with Collison's request and sent a "Notice of

Valuation Change" to the coowner, Winkler, reflecting an increase in the valuation of the property "due to mobile homes being added to real estate." This notice also stated that any protest against the change in valuation was to be filed within 10 days of the date of the notice. See Neb. Rev. Stat. §§ 77-518 and 77-1315 et seq. (Reissue 1981). Neither owner filed a protest regarding the increase in valuation.

A year or more later, Winkler informed the assessor that he was concerned because Collison was removing mobile homes from the property. Evidently to assist Collison and Winkler, the assessor thereafter recorded the land valuations separately from the mobile home valuations, "so they [Collison and Winkler] could clearly see where their value laid [sic]." The record does not reveal how Collison and Winkler would have benefited from having the land and mobile home valuations recorded separately. Such separate valuations could indicate that Collison and Winkler had different ownership interests in the mobile homes than in the underlying property, although the record does not confirm this. In any event, the record does reveal that Collison and Winkler failed to pay the portion of the property taxes allocated to the mobile homes from 1981 through 1988.

In 1988, Collison assigned his interest in the property to First National Bank of Holdrege. In February 1991, the county brought an action to foreclose on the property due to delinquent taxes. At the trial, the parties stipulated that the liens that were being foreclosed related to real estate taxes on the mobile homes, assessed as real estate and not as unattached personal property. In February 1992, the district court for Phelps County entered a decree of foreclosure, and appellants have timely appealed from that decree.

## ASSIGNMENTS OF ERROR

Appellants maintain that the tax liens enforced by the foreclosure proceedings were "solely those against certain mobile homes which were separately assessed and valued" and that the trial court erred by "allowing a foreclosure upon the underlying premises for taxes assessed and levied against other real estate, in this case mobile homes."

## DISCUSSION

Neb. Rev. Stat. § 77-103 (Reissue 1981) defined "real estate" as "city and village lots and all other lands, and all buildings, fixtures, improvements, cabin trailers or *mobile homes* which shall have been permanently attached to the real estate upon which they are situated." (Emphasis supplied.) Because the parties to this case have stipulated that the mobile homes were taxed as real estate, we need not address the issue of whether the mobile homes were permanently attached to the real estate. Neb. Rev. Stat. § 77-203 (Reissue 1990) provides that unpaid real estate taxes are a first lien "on the real estate taxed." Appellants contend that the county could not establish liens on the underlying land under § 77-203 because the mobile homes were taxed separately from the underlying land. Appellants claim that because the unpaid taxes related only to the mobile homes, the liens arising from the unpaid taxes could attach to the mobile homes only and not to the underlying property.

Appellants' claim that the mobile homes were taxed separately from the underlying property is contradicted by the record. The only means of identifying the mobile homes in the assessor's records was according to the lots to which they were attached. Further, the assessor's records reveal that the mobile homes were assessed as "Buildings and Improvements" to the lots on which the mobile homes were situated. As noted above, § 77-103 also includes buildings and improvements within the definition of real estate. Appellants' argument that the mobile homes were taxed separately is thus without merit.

Even if the mobile homes were assessed separately from the underlying property, authority from other jurisdictions indicates that a tax on land and a building or other improvement is a single and indivisible tax, even if the building or improvement is assessed separately from the land. See, *Matter of Spangles, Inc.*, 17 Kan. App. 2d 335, 835 P.2d 699 (1992); *In re Tax Objections of Hutchens*, 34 Ill. App. 3d 1039, 341 N.E.2d 169 (1976); 84 C.J.S. *Taxation* § 72 (1954). We agree with these authorities and find that the tax on the mobile homes and the underlying lots in this case was a single and indivisible tax, and as such, any portion of the tax which remained delinquent became a lien on the entire property taxed,

including the lots to which the mobile homes were attached.

Appellants also contend that the mobile homes were taxed separately because the assessor listed the mobile homes on separate ledger pages from the lots. However, as noted above, the mobile homes were identified in the assessor's books according to the lots to which they were attached. In addition, Neb. Rev. Stat. § 77-1853 (Reissue 1990) provides that "[i]rregularities in making or equalizing assessments . . . shall not invalidate . . . the tax levied on any property or charged against any person." Neb. Rev. Stat. § 77-1854 (Reissue 1990) defines "irregularities" for purposes of § 77-1853 as "any irregularity, informality or omission in any assessment book, tax collector's book, or other record of any real or personal property assessed for taxation." In this case, the assessor's assessment of the mobile homes on different ledger pages from the underlying property is at most a mere irregularity and does not affect the validity of the taxes or subsequent liens on the underlying property. Appellants received due notice of the assessments on the mobile homes, yet failed to pay the taxes or timely challenge the assessments. For these reasons, we affirm the order of the district court.

AFFIRMED.