(865 P.2d 223)
No. 69,440

CITY OF LAKIN, *Appellant*, v. KANSAS SECURITY BOARD OF REVIEW and RONALD L. VANOVER, *Appellees*.

Opinion filed December 30, 1993.

*Ted R. Morgan*, of Lakin, for appellant.

*James R. McEntire*, of Topeka, for appellee Employment Security Board of Review.

Before GREEN, P.J., ELLIOTT, J., and R. DAVID LAMAR, District Judge, assigned.

ELLIOTT, J.: The City of Lakin appeals the district court's affirmance of the administrative tribunal's findings that Ronald L. Vanover was entitled to unemployment benefits.

We affirm.

The facts are not in dispute. Vanover was employed by the City of Lakin from June 3, 1991, through September 20, 1991. Vanover was then employed at a local business for a short period of time, after which he filed a claim for unemployment benefits. Vanover's position with Lakin was known by him to be for a short period of time.

The Kansas Department of Human Resources (KDHR) examiner ruled Vanover to be eligible for unemployment benefits and charged Lakin's account. Lakin appealed the examiner's decision,

and after a telephone hearing, the appeals referee affirmed the examiner's decision.

Lakin appealed again, this time to the Employment Security Board of Review. The Board affirmed the decisions of the examiner and referee. Lakin's next stop was in district court, which affirmed the Board's decision.

Lakin now claims the examiner, the referee, the Board, and the district court all erred in interpreting K.S.A. 1992 Supp. 44-710.

Since the sole issue on appeal involves the interpretation of a statute, the issue is a question of law and our standard of review is plenary. *Amoco Production Co. v. Armold, Director of Taxation*, 213 Kan. 636, Syl. ¶ 4, 518 P.2d 453 (1974); *In re Tax Protest of Spangles, Inc.*, 17 Kan. App. 2d 335, Syl. ¶ 1, 835 P.2d 699 (1992).

K.S.A. 1992 Supp. 44-710(c)(2)(A) states:

"Benefits paid in benefit years established by valid new claims shall not be charged to the account of a contributing employer or rated governmental employer who is a base period employer if the examiner finds that claimant was separated from the claimant's most recent employment with such employer under any of the following conditions: (i) Discharged for misconduct or gross misconduct connected with the individual's work; or (ii) leaving work voluntarily without good cause attributable to the claimant's work or the employer."

No one argues there was any misconduct and everyone agrees Lakin was a base period employer. The narrow issue remaining for decision is whether an employee whose fixed-term job has ended, as a matter of law, has voluntarily left work without good cause attributable to the work or employer. We view this as a question of first impression in Kansas.

Lakin's argument may be simply stated: Vanover voluntarily entered into a limited-term employment contract, and therefore he has voluntarily left work. Accordingly, Lakin's account should not be charged. In other words, Vanover is not unemployed involuntarily.

Lakin relies on *McCall Pattern Co. v. Kansas Employment Security Bd. of Review*, 238 Kan. 608, 712 P.2d 1266 (1986). We find *McCall* distinguishable and therefore not controlling in the present case.

In *McCall*, claimants had accepted employment knowing there would be virtually no work for two months of the year. 238 Kan. at 612. In *McCall*, the court had to decide whether the employees were "unemployed" for the two months when McCall did not provide work. The court ruled the employees were not eligible for benefits because they remained employed and because they had voluntarily entered into the unusual employment situation. 238 Kan. at 612-13.

As we read *McCall*, the employees were denied benefits simply because they were *not* unemployed; they were still employed during the unusual two-month hiatus.

Unlike the claimants in *McCall*, Vanover, while voluntarily accepting the limited-term position, apparently had no power to extend the period of employment.

Other states have addressed this issue. For example, Minnesota has held that even though a claimant knowingly accepted a job she knew would last for only 11 weeks, she had not voluntarily terminated her employment and was therefore eligible for unemployment benefits. *Loftis v. Legionville Sch. Safety Patrol*, 297 N.W.2d 237 (Minn. 1980). Accord *Walker Mfg. Co. v. Pogreba*, 210 Neb. 619, 316 N.W.2d 315 (1982).

Vermont has also held that an employee who accepts a temporary position does not leave that position voluntarily at the end of the term *unless* it was the employee, not the employer, who imposed the limitation on the period of employment. *Lincoln v. Dept. of Employment & Training*, 156 Vt. 316, 320, 592 A.2d 885 (1991).

The statutes of those states, applicable at the time, are similar to ours. See Minn. Stat. § 268.09 subdiv. 1(1) (1978); Neb. Rev. Stat. § 48-628 (1978); Vt. Stat. Ann. 21-1344(a)(2)(A) (1987).

K.S.A. 44-702 articulates our public policy to be concerned with involuntary unemployment as a serious menace to the health, welfare, and morals of Kansans. Clearly, Kansas public policy seeks to protect against involuntary unemployment. *Clark v. Board of Review Employment Security Division*, 187 Kan. 695, 698, 359 P.2d 856 (1961).

The statutes with which we deal are remedial. And remedial legislation should be liberally construed. *Smith v. Marshall*, 225 Kan. 70, 75, 587 P.2d 320 (1978).

Lakin's interpretation of K.S.A. 1992 Supp. 44-710(c) is too narrowly focused on the word "voluntarily"—which is modified by the phrase "without good cause attributable to the claimant's work or the employer." See *Wailuku Sugar Co. v. Agsalud*, 65 Hawaii 146, 648 P.2d 1107 (1982).

Most courts considering this question have ruled that, where a claimant had no realistic choice in determining the duration of employment, claimant is eligible for unemployment benefits at the end of the limited-term employment because he or she is out of work through no fault of his or hers. See Annot., 30 A.L.R.4th 1201.

Lakin, as the party challenging the agency action, has the burden to show the invalidity of the agency's action. The evidence in the record, as we read it, suggests Vanover was offered his summer employment on a take-it or leave-it basis.

Affirmed.