(159 P.3d 1050)
No. 95,947

In The Matter of The Protest of United Ag Services, Inc. for Taxes Paid for 1998 and 1999 in Russell County, Kansas.

Opinion filed June 1, 2007.

*Linda Terrill*, of Neill, Terrill, & Embree, of Leawood, for appellant.

*Mark Arthur, Jr.*, of Russell, for appellee.

*William E. Waters*, of Division of Property Valuation of Kansas Department of Revenue, for *amicus curiae* Mark S. Beck, Director of Property Valuation.

*Gerald N. Capps*, of Wichita, for *amicus curiae* Cowley County.

Before RULON, C.J., GREENE, J., and LARSON, S.J.

GREENE, J.: United Ag Services, Inc. (UAS) appeals the district court's order reversing the State Board of Tax Appeals (BOTA) decision vacating "escaped" ad valorem taxes assessed against UAS. UAS argues on appeal that (i) BOTA correctly found that the assessments were void under K.S.A. 79-412; (ii) the subject property did not escape taxation under K.S.A. 79-1475; (iii) there was no clerical error correctable under K.S.A. 79-1701 *et seq.*; and (iv) the subject property was real estate of a public utility subject to separate valuation and assessment under K.S.A. 79-5a04. Although we conclude that BOTA erred in construing and applying K.S.A. 79-412, we agree with UAS that the property did not escape taxation and there was no clerical error correctable under K.S.A. 79-1701 *et seq.*, thus requiring the assessments be voided. Accordingly, we reverse the district court and affirm BOTA on other grounds.

### *Factual and Procedural Background*

The facts are undisputed and were submitted by stipulation to BOTA as follows:

"1. The subject property is two grain elevators, parcel identification number 084-159-32-0-00-00-003.01-1.

"2. The tax years which are the subject matter of the tax protest are 1998 and 1999.

"3. For the tax year 1995, the property had a 250,000 bushel concrete elevator and two 109,000 bushel capacity metal bins. In May, 1995, high winds destroyed both metal bins.

"4. The taxpayer notified Russell County Economic Development on 2/15/96 of the loss of the two bins and of its intent to construct two new concrete bins to replace them. The two metal bins were removed from the tax rolls.

"5. The taxpayer completed construction of the two new concrete bins in 1996. Building permits were not required.

"6. The values and taxes for each relevant year are summarized below. . . .

|      | *Value* | *Taxes* |
|------|---------|---------|
| 1995 | 101,092 | 3,885.72 |
| 1996 | 80,000  | 3,115.50 |
| 1997 | 80,000  | 3,313.22 |
| 1998 | 85,500  | 3,257.96 |
| 1999 | 85,500  | 3,389.16 |
| 2000 | 321,300 | 11,735.96 |

"7. In the year 2000, Russell County reappraised grain elevators. In reviewing the subject property for the year 2000, the county appraiser discovered the two new 1997 concrete grain elevators had not been added to the valuation of the parcel. The 2000 value was increased to $321,300 after adding the two 1997 concrete grain elevators and the value per bushel on all the storage was raised from 34 per bushel to 63 per bushel.

"8. At that time, Russell County issued escaped tax bills for the years 1998 and 1999, adding $202,800 and $182,000 respectively, in value for each of the years. The escaped tax bills for 1998 and 1999, without interest, are $7,727.63 and $7,214.34, respectively.

"9. The elevators are located upon land leased from the railroad and said lands are state assessed.

"10. The lease between the railroad and the taxpayer is not of record.

"11. The taxpayer perfected a tax grievance with the Board of Tax Appeals regarding which the Board found that it had no jurisdiction since a tax grievance was not the appropriate remedy.

"12. The taxpayer paid the escaped tax bills for 1998 and 1999, with interest, under protest, on July 31, 2003, in the following amounts:

|                  | 1998        | 1999       |
|------------------|-------------|------------|
| Principal        | 7,727.64    | 7,214.34   |
| Interest         | 2,628.68    | 2,454.08   |
| Publication fee  | 16.00       | 16.00      |
|                  | $10,372.32  | $9,684.42  |

"13.  The taxpayer was awarded an informal meeting stemming from the protest on 8/19/03 before Barbara Konrade, County Appraiser, and no change was made."

In its initial order, BOTA agreed with UAS's assertion that the escaped tax assessments "are void as they violate K.S.A. 79-412." After quoting this statute, BOTA reasoned:

"The subject elevators are located upon land leased from the railroad and said land is state assessed. . . . The lease between the railroad and the Taxpayer is not of record. Without said lease being recorded with the County, the Board must find that the subject elevators should be assessed to the landowners and, therefore, be state assessed and not County assessed. As indicated by the County in its brief, 'the county appraiser has no authority to assess railroad property since it is state assessed.' The Board finds K.S.A. 79-412 to be clear and unambiguous in regard to this issue.

". . . Pursuant to K.S.A. 79-412, without the recording of documentation indicating that the subject improvements are owned by an entity other than the railroad, the instant escaped tax assessments are improper and hereby vacated."

The district court reversed BOTA, concluding that BOTA's interpretation and application of K.S.A. 79-412 was erroneous because it "cannot be the intent of the legislature to allow improvements to not be assessed by the decision of the owners of the improvements of their own choosing if they choose to not record their leases." Holding BOTA's decision unreasonable, arbitrary, and capricious, the district court upheld the assessments.

UAS appeals.

### Standard of Review

BOTA decisions are subject to review under the statutory standards established by K.S.A. 77-621. To the extent that BOTA erroneously interpreted or applied the law, the courts are required to grant relief. K.S.A. 77-621(c)(4). When a district court has reviewed a BOTA decision, the appellate court must first determine whether the district court observed the requirements and restric-

tions placed upon it and then make the same review of the administrative agency's action as does the district court. *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 964, 26 P.3d 1246 (2001), *cert. denied* 534 U.S. 1081 (2002).

BOTA is a specialized agency and is considered to be the paramount taxing authority in Kansas. Its decisions are given considerable weight and deference when it is acting in its area of expertise. The party challenging BOTA's decisions has the burden to prove that the action taken was erroneous. If BOTA's interpretation of law is erroneous as a matter of law, however, appellate courts will take corrective steps. *In re Tax Appeal of Sprint Communications Co.*, 278 Kan. 690, 694-95, 101 P.3d 1239 (2004); see also *In re Equalization Proceeding of Amoco Production Co.*, 33 Kan. App. 2d 329, 332, 102 P.3d 1176 (2004).

### *What is the Nature of the Subject Property?*

Although the parties, BOTA, and the district court have apparently considered the subject property as real property for purposes of ad valorem taxation, we must initially determine whether the property is in fact real property or personal property for these purposes. We address this question despite the parties' failure to raise it because (i) considering a mere leasehold interest as realty seems rather counterintuitive; and (ii) the nature of the property is critical to the outcome of this appeal.

Based upon the factual stipulations, the subject property is described as "two new concrete bins" or "grain elevators" "located upon land leased from the railroad." Railroad property is not subject to county appraisal but rather is subject to valuation by the State pursuant to K.S.A. 79-5a01 *et seq.* The parties suggested in oral argument that these elevators should be considered realty because they are clearly improvements to realty not unlike fixtures; they argued that these grain elevators are intended as permanent structures that should be considered part of the realty under the law of the fixtures. We recognize and endorse the law of fixtures (see *In re Equalization Appeals of Total Petroleum, Inc.*, 28 Kan. App. 2d 295, 299-301, 16 P.3d 981 [2000]), and we acknowledge that for purposes of ad valorem taxation in Kansas, the term "real

property" may generally include not only the land itself, but the improvements. K.S.A. 79-102 provides:

"That the terms 'real property,' 'real estate,' and 'land,' when used in this act, except as otherwise specifically provided, shall include not only the land itself, but all buildings, fixtures, improvements, mines, minerals, quarries, mineral springs and wells, rights and privileges appertaining thereto."

The law of fixtures and the general definition within K.S.A. 79-102, however, are not necessarily determinative of the nature of the property where the improvements are located on leased land. Here, the property is a leasehold estate consisting of improvements on railway right-of-way. As a matter of common law, a tenant has the right to possession of realty under a lease, but the tenant's estate is generally classified as a nonfreehold "chattel real," a species of personalty. See, *e.g.*, Stoebeck and Whitman, The Law of Property § 6.13 (3d ed. 2000). The question is whether Kansas law treats improvements on leased land as realty or personalty for purposes of taxation, especially where the improvements are constructed on railway right-of-way.

First, we examine additional language with K.S.A. 79-102 expressly providing that certain property situated on the right-of-way of any railway is to be considered personal property, where "owned, leased, used, occupied or employed by any railway:"

"The term 'personal property' shall include every tangible thing which is the subject of ownership, not forming part or parcel of real property; . . . *and also all 'property' owned, leased, used, occupied or employed by any railway or telegraph company or corporation within this state, situate on the right-of-way of any railway.*" (Emphasis added.)

Does this language apply where the railway is the landlord, not the tenant? We think not. When the term "leased" is examined within a list that includes "owned," "used," "occupied," and "employed," we believe the legislative intent was to include property over which the railway exercises some measure of possessory rather than purely reversionary interest. The statutory construction doctrine of *"noscitur a sociis"* is appropriate here to ascertain the meaning of "leased" by reference to those words or phrases with which it is associated, rather than determine its meaning in isola-

tion. See *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 991 P.2d 889 (1999). We also decline to interpret K.S.A. 79-102 in a manner that would render other words or phrases within the statute nonsensical or meaningless. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997). We conclude that K.S.A. 79-102 does not require that the subject property be treated as personalty for purposes of taxation.

More importantly, however, is that our legislature has repealed a statute requiring improvements on leased land be considered personal property for purposes of ad valorem taxation. Prior to 1981, K.S.A. 79-328 (Weeks 1977) provided:

"All improvements put on leased lands that do not become a part of the realty shall be assessed to the owner of such improvements as personal property, and the taxes imposed on such improvements shall be collected by levy and sale of the interest of such owner, the same as in all other cases of the collection of taxes on personal property."

In 1981, however, K.S.A. 79-328 (Weeks 1977) was repealed. Minutes of the House Committee on Assessment and Taxation for March 24, 1981, reflects the following explanation for the legislation:

"[The Chairman] explained that currently grain elevators when situated on leased land are taxed as personal property but in most cases it appears that elevators on land owned by the same person are being also taxed as personal property. *The bill intended to make it clear that grain elevators will be real property for property tax purposes even if on leased land.* . . . He noted that 79-328 has been on the books since 1868, and explained that after conversations with people from PVD, they had concluded that by repealing 79-328, the desired effect would be achieved." (Emphasis added.)

Although not definitive as to legislative intent, the Senate and House Journals for the 1981 session refer to the legislation repealing the statute as "S 353—Improvements on leased land to be real property for tax purposes." Senate and House Journals, 1981 session, p. 1155.

This court has previously acknowledged that the effect of the repeal was to move improvements on leased property from personal property tax rolls to the real estate tax rolls. *In re Tax Protest of Spangles, Inc.*, 17 Kan. App. 2d 335, 336, 835 P.2d 699 (1992).

The legislature has not seen fit at any time since to change the "desired effect" of the 1981 repeal of K.S.A. 79-328 (Weeks 1977); thus, we conclude that the subject property is realty for purposes of ad valorem taxation in Kansas.

### How Should the Taxpayer's Property be Treated Under K.S.A. 79-412?

Both BOTA and the district court found K.S.A. 79-412 controlling, but the agency and the court disagreed as to its interpretation and application. We analyze the statute for potential application here but note at the outset that BOTA applied a version of the statute that was inapplicable to the tax years at issue. That version, enacted in 1999 and effective on July 1, 1999, provided:

"It shall be the duty of the county or district appraiser to value the land and improvements; but the value of the land and improvements shall be entered on the assessment roll in a single aggregate, except as hereinafter provided. *Improvements owned by entities other than the owner of the land shall be assessed to the owners of such improvements, if the lease agreement has been recorded or filed in the office of the register of deeds.* Delinquent taxes imposed on such improvements may be collected by levy and sale of the interests of such owners the same as in cases of the collection of taxes on personal property." (Emphasis added.) L. 1999, ch. 126 sec. 5.

According to *amicus curiae* Director of Property Valuation Division of the Kansas Department of Revenue (PVD), the 1999 amendment to K.S.A. 79-412 was not applicable to the 1998 and 1999 tax years because the county appraiser's appraisal work for those years was completed on or before June 15, 1999, and the statutory change was not effective until July 1, 1999. See K.S.A. 79-1455; 79-1459(d); 79-411; 79-1466; and 79-1467. We agree. Instead of this 1999 version, the prior version of K.S.A. 79-412 was applicable for the tax years at issue. That version contained no general provision for assessing improvements on leased land subject to lease recordation but rather provided:

"It shall be the duty of the county or district appraiser to value the land and improvements; but the value of the land and improvements shall be entered on the assessment roll in a single aggregate, except as hereinafter provided. Improvements owned by entities other than a city and located on land owned by a city may be assessed to the owners of such improvements, and the taxes imposed on

such improvements may be collected by levy and sale of the interests of such owners the same as in cases of the collection of taxes on personal property." L. 1997, ch. 126, sec. 31.

Accordingly, when BOTA relied for its decision here on the fact that a lease between the railroad and the taxpayer was not of record, it erred in applying a version of the statute that was not yet applicable. This error undermines BOTA's decision as to application of the statute under these circumstances.

In examining applicability of the correct version of K.S.A. 79-412, we turn first to the statutory language mandating the entry on the tax rolls of the values of both land and improvements "in a single aggregate." UAS argues that this mandate renders the county's belated and separate assessments on the improvements void. We disagree. As noted by PVD, K.S.A. 79-412 is applicable only where the county appraiser values *both* the land and the improvements; this is not the case where there is divided ownership and a public utility owns the land that must be valued and assessed by PVD pursuant to K.S.A. 79-5a01 *et seq.* Moreover, county appraisers are precluded by statute from valuing state-appraised property, and PVD is precluded from valuing realty not owned by public utilities. Compare K.S.A. 79-1412a, *Second* with K.S.A. 79-1404, *Fifteenth.* We conclude that the mandate for such values to be entered "in a single aggregate" under K.S.A. 79-412 has no application under these circumstances.

Turning to the language in K.S.A. 79-412 allowing separate assessments in certain circumstances, we likewise conclude that this language has no application here because although these "improvements" were owned by entities "other than a city," they were not "located on land owned by a city." Obviously, the "improvements" were located on land owned by a railway. We decline to extend the reach of the applicable version of K.S.A. 79-412 to "improvements" "owned by entities other than a city" and located on land owned by any other person or entity.

Our conclusion rejecting application of K.S.A. 79-412 under these circumstances is neither unique nor contrary to the case law urged by the taxpayer. There are a host of statutory mandates for county appraisers in the valuation of property that simply do not

apply to the valuation of public utility property by PVD. See, *e.g.*, K.S.A. 79-304; K.S.A. 79-306; K.S.A. 79-408, *etc.* Moreover, the principal case authority urged by taxpayer and relied upon by BOTA, *In re Spangles*, addressed the valuation of land and improvements when *both* were assessed by the county appraiser, and must be distinguished from circumstances where the land is owned by a public utility and the improvements on that land are not. We firmly believe that—as urged by amicus curiae PVD—application of K.S.A. 79-412 to these circumstances would create practical difficulties not contemplated by the statutory scheme for either county assessed or PVD assessed properties. We are duty bound to interpret statutes so as to avoid unreasonable results. *State v. Herrman*, 33 Kan. App. 2d 46, 48, 99 P.3d 632 (2004). For these reasons, we reject the taxpayer's arguments that K.S.A. 79-412 required a consolidation of land and improvement values and a singular assessment to the railway under K.S.A. 79-5a01 *et seq.*

In summary, we conclude that neither version of K.S.A. 79-412 is controlling or applicable to the issue before us. To this extent, both BOTA and the district court were in error.

### *Was There Statutory Authority to Support the Issuance of the "Escaped" Tax Assessments Under These Circumstances?*

We turn to an analysis of statutory authority for a county to issue "escaped" tax assessments on the subject property. The parties discuss several alternative approaches, with differing views as to application under these circumstances.

#### *K.S.A. 79-1475*

The county suggests that the property was subject to escaped taxation pursuant to K.S.A. 79-1475, which provides:

"Whenever the county appraiser discovers that any real property subject to taxation *has been omitted from the tax rolls*, such property shall immediately be listed and valued by the appraiser, and returned to the county clerk." (Emphasis added.)

Whether or not property has truly "escaped" taxation, however, has been a subject of considerable litigation in Kansas. See, *e.g.*,

*In re Application of U.S.D. No. 437 for Tax Relief*, 243 Kan. 555, 757 P.2d 314 (1988); *In re Order of Board of Tax Appeals*, 236 Kan. 406, 691 P.2d 394 (1989); *Crawford v. Board of Johnson County Comm'rs*, 13 Kan. App. 2d 592, 776 P.2d 832 (1989). Suffice it to say that these cases focus on the phrase "omitted from the tax rolls" in construing and applying the escaped tax statute.

The current version of K.S.A. 79-1475 was interpreted by this court in *In re Application of TV Realty*, 27 Kan. App. 2d 28, 997 P.2d 742, *rev. denied* 269 Kan. 932 (2000). There, this court declined to apply the statute to allow belated "escaped" taxation from the owner of realty where the county failed to change the name and address of the owner of recently acquired realty so that the prior owner timely received the tax bill, but the new owner did not. In refusing to apply K.S.A. 79-1475, the court reasoned:

"[K.S.A. 79-1475] is limited in its application to property that has been omitted from the tax rolls. Both parcels purchased by TV Realty were listed on the tax rolls; the tax statement for the one in question simply was not mailed to the new owner. We agree with BOTA that this was not 'escaped' property within the meaning of the statute." 27 Kan. App. 2d at 31.

We believe that the analysis and result in *TV Realty* is sound, and we follow it here. Because some improvements of UAS were assigned a parcel number, listed on the tax rolls and assessed for the tax years in question, the parcel of realty itself did not "escape" taxation within the meaning of K.S.A. 79-1475 despite the absence of any value attributable to the *new* grain elevators. See also *In re Harry Turner and Associates, Inc.*, 153 B.R. 573 (Bankr. D. Kan. 1993) (property on the rolls as exempt not subject to belated "escaped" taxation); *Bd. of Equalization v. Nupetco Assoc.*, 779 P.2d 1138 (Utah 1989) (mistake in acreage within assessed parcel of realty did not "escape" taxation but rather mere undervaluation not subject to retroactive correction).

In concluding that UAS's property did not "escape" taxation, we agree with UAS in arguing that finality in matters of taxation is critical.

"If [79-1475 applies here] where would one stop? If a county appraiser learns that an income producing property was valued using the income approach to value assuming rents of $15 per square foot and the property is actually leased at $16

per square foot, should the court find an 'escaped' valuation and allow the appraiser to issue an escaped assessment? What if a home is valued at $150,000 and sells for $175,000, should the court find an 'escaped' valuation and allow the appraiser to issue an escaped assessment? Clearly, the answer is no as any other answer would lead to all kinds of mischief, uncertainty and chaos."

We also believe our conclusion is supported by the fact that our legislature knows how to provide a remedy for undervaluation and did not choose to do so for realty. In K.S.A. 79-1427a, the legislature permits escaped tax assessments where personal property "has been underreported for whatever reason." This broad language is *not* included in 79-1475 (nor is similar language permitting retroactive relief where property is "undervalued for any reason"), and we decline to judicially graft it into the statute addressing escaped taxation for realty. A statute should not be read to add language that is not found in it. See *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

The distinction between statutory mechanisms for retroactive relief on behalf of counties against taxpayers may be explained by the difference in the relative responsibilities of taxpayer and county for real property in comparison to personal property. In the case of personal property, the taxpayer has a statutory responsibility to *report* taxable property to the taxing authority; in the case of real property, it is the county appraiser who must list and appraise the property without any affirmative obligation on the taxpayer to *report*. Compare K.S.A. 79-306 with K.S.A. 79-411 and K.S.A. 79-1412a, *Second*. Understanding this fundamental difference, the legislature has provided more extensive remedies for escaped taxation in the case of personal property than are provided in the case of real property.

We conclude that K.S.A. 79-1475 is not applicable to support "escaped" tax assessments where the new elevators were not included in the initial assessment of the real estate parcel that was placed on the tax rolls and taxed in the ordinary course for the tax years in question.

### K.S.A. 79-1701 et seq.

Both parties discuss, but neither embraces, K.S.A. 79-1701 *et seq.* as applicable to support the tax assessments at issue. This stat-

utory scheme establishes a tax grievance procedure and was intended to address the correction of clerical errors in the assessment and taxation process.

The statute was amended in two significant respects in 1999, and we must first determine whether the amended version is applicable here. Unlike the appraisal statute, where we determined that the version in effect during the appraisal process should control, K.S.A. 79-1701 *et seq.* is a remedial statute, intended to provide a mechanism for correction of errors that have already occurred. When a change of law merely affects the remedy or law of procedure, all rights of action will be enforced under the new procedure without regard to whether they accrued before or after the change of law. See *Jackson v. American Best Freight System, Inc.*, 238 Kan. 322, 324-25, 709 P.2d 983 (1985). Accordingly, where the purported error was discovered after the effective date of the amendments, we apply the amended version.

The amended version of K.S.A. 79-1701 lists seven specific types of clerical errors that may be corrected pursuant to this procedure. Our appellate courts have construed this statute rather strictly to limit relief to the specific errors listed. See, *e.g.*, *Wirt v. Esrey*, 233 Kan. 300, 316-17, 662 P.2d 1238 (1983). None of the seven types of clerical errors are implicated here, with the possible exception of K.S.A. 79-1701(h). Prior to amendment, 79-1701(h) had direct application to circumstances like those before us here, enabling correction of "errors whereby the values of taxes are understated or overstated as a result of a mistake on the part of the county," but the amendments eliminated this language and substituted instead language permitting correction of "errors whereby the values or taxes are understated or overstated as a result of a mathematical miscomputation on the part of the county." K.S.A. 2006 Supp. 79-1701(g).

Here, UAS's values were purportedly understated as a result of the failure to include a valuation for two new improvements on the parcel. We decline to consider this as a "mathematical miscomputation" and therefore conclude that K.S.A. 79-1701 *et seq.* was not applicable to support the "escaped" tax assessments.

### *K.S.A. 79-1427a*

UAS argues the statute expressly addressing escaped taxation does not apply here because the leasehold interest was real property. Obviously, having determined that the nature of the property was indeed realty, we agree. This statute has no direct application to UAS's leasehold interest here because its reach is limited to personal property interests.

## *Summary and Conclusion*

In summary, we have confirmed that the subject property was realty for these purposes, and this conclusion proved critical to our analysis in applying the various statutory schemes purportedly supporting the belated tax assessments under these circumstances. Because K.S.A. 79-1427a does not apply to real property, and the undervaluation of the real estate parcel qualifies neither as "escaped" under K.S.A. 79-1475 nor as a clerical error subject to correction under K.S.A. 79-1701 *et seq.*, there is simply no statutory vehicle to support these assessments under these circumstances. Where the legislature has not provided a remedy for a taxing district's undervaluation of a real estate parcel that is not detected prior to sending out tax notices, belated "escaped" tax assessments on the undervalued parcel must be set aside. *In re Order of Board of Tax Appeals*, 236 Kan. at 413. For these reasons, the assessments are void, and they must be vacated as a matter of law.

The district court's conclusion that BOTA erred and the assessments were valid and enforceable must be reversed. BOTA's decision vacating the assessments must be and is hereby affirmed, although on different grounds. See *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005). Accordingly, we reverse the district court and remand to the district court with instructions to remand the matter to BOTA for an order vacating the subject tax assessments.

Reversed and remanded with directions.