(176 P.3d 231)
No. 98,705

BLUESTEM TELEPHONE COMPANY, *et al.*, *Appellees*, v. KANSAS CORPORATION COMMISSION, *Appellant*.

Opinion filed February 8, 2008.

*Patrice Petersen-Klein* and *Scott Ray Ediger*, advisory counsel, and *Martha Coffman*, chief advisory counsel, of Kansas Corporation Commission, for appellant.

*Mark E. Caplinger* and *James M. Caplinger*, of James M. Caplinger, Chartered, of Topeka, for appellee State Independent Alliance, and *Thomas E. Gleason, Jr.*, of Gleason & Doty, Chartered, of Lawrence, for appellees Independent Telecommunications Group.

Before GREENE, P.J., McANANY and BUSER, JJ.

GREENE, P.J.: The Kansas Corporation Commission (KCC) appeals a district court judgment that reversed a KCC order and awarded interest to a group of rural telecommunication companies, which received a restoration of support payments they had lost from the Kansas Universal Service Fund (KUSF) for access line adjustments under K.S.A. 66-2008(e). The restoration of these payments was ordered by the KCC after a mandate from this court that affirmed the district court and overturned the basis utilized by the KCC in calculating the appropriate adjustments to KUSF support for 2003 through 2005 because the KCC failed to consider the required statutory factors for each such adjustment. *Bluestem Telephone Co. v. Kansas Corporation Comm'n*, 33 Kan. App. 2d 817, 109 P.3d 194, *rev. denied* 280 Kan. 981 (2005) (*Bluestem I*). When the KCC decided on remand to simply restore the prior support payments absent any recalculation of the proper adjustments for the subject periods, the companies claimed they were entitled to interest on the restored amounts. We disagree and reverse the district court, concluding the prior judgment affirmed by this court was not a complete and final determination subject to postjudgment interest as a matter of law.

### Factual and Procedural Background

The KUSF was established to provide a subsidy for local exchange telephone carriers in order to replace revenue lost from bringing intrastate and interstate rates into parity pursuant to state and federal law. See *Citizens' Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 264 Kan. 363, 368-69, 375, 956 P.2d 685 (1998). In determining such support for 2003 through 2005, the KCC made adjustments to these subsidy or support payments on a per-line basis rather than on the four factors set forth in K.S.A. 66-2008(e), *i.e.*, embedded costs, revenue requirements, investments, and expenses. The companies objected to this method of determining adjustments, and when the KCC rejected their claims, judicial review resulted in a district court finding that the KCC had "disregarded" the legislative requirements; the court then rescinded the KCC per-line adjustments and ordered the KCC to examine the costs of all qualified companies to determine KUSF distributions. See *Bluestem I*, 33 Kan. App. 2d at 821.

On remand, the KCC now claims it faced a dilemma "that the audits necessary to establish embedded costs are time consuming and complex, and were impossible to accomplish in a reasonable time frame." Accordingly, the KCC determined that the only practical solution for compliance with the judicial mandate and the statutory requirements was simply to return or "restore" to the recipients all of the KUSF support that had been reduced as a result of the per-line adjustments. This resulted in rather sizeable restoration payments totaling nearly $3.5 million to the companies.

The companies sought interest on the restored payments, but the KCC found and concluded they were not entitled to interest for two reasons: (1) because they waived postjudgment interest when it was not raised and requested in the initial proceedings; and (2) because the courts had not awarded damages or compensation in an amount "readily determinable" but merely provided statutory interpretation to be implemented on remand. On judicial review by the district court, however, the court agreed with the companies, concluding that the effect of the court's order "resulted in specific sums of money being paid to [the companies]" thus

entitling them to interest from the date of the prior district court order (April 30, 2004), relying principally on *Greenhaw v. Board of Johnson County Comm'rs*, 245 Kan. 67, 744 P.2d 956 (1989).

The KCC appeals the order of the district court, contending it erred in awarding interest under these circumstances.

### Standard of Review

The standard of review for an agency determination is controlled by K.S.A. 77-621(c), and when an appellate court reviews a district court determination under the statutory scheme, we determine whether the district court followed the requirements and restrictions placed upon it and then make the same review of the agency action as that set forth for the district court in the statute. *In re Tax Protest of United Ag Services*, 37 Kan. App. 2d 902, 905-06, 159 P.3d 1050 (2007).

To the extent this appeal requires that we construe and apply K.S.A. 16-204 (interest on judgments), we are not bound by the district court's interpretation and are obligated to interpret and apply the statute de novo. *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004). Although we give some deference to an agency's interpretation of statutes that the agency is charged with implementing (see, *e.g., Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 247, 75 P.3d 226 [2003]), we do not perceive K.S.A. 16-204 as such a statute.

To the extent this appeal requires that we determine compliance with a prior mandate of this court, we have unlimited review. *Kansas Baptist Convention v. Mesa Operating Ltd. Partnership*, 258 Kan. 226, 231, 898 P.2d 1131 (1995).

### Did the Companies Waive any Right to Postjudgment Interest by Failing to Seek Such Interest From the Outset of these Proceedings?

Before examining the merits of the companies' entitlement to postjudgment interest, we address the KCC's argument that any such claim has been waived. The KCC concluded that postjudgment interest had been waived by the companies because it was not requested in the original action. The district court disagreed,

concluding the issue of interest did not arise until the KCC determined amounts owed.

The general rule is that postjudgment interest is not waived by a failure to request it in a pleading:

"[W]here interest attaches automatically until the judgment is paid, interest may be awarded whether or not it is prayed for in the petition, or mentioned in the judgment. Thus where interest is payable by virtue of statute or rule of court and not by virtue of a contract, it generally is not necessary to make a specific claim for interest in the declaration or complaint." 47 C.J.S., Interest and Usury § 137, pp. 172-73.

Other states with statutes providing for postjudgment interest similar to K.S.A. 16-204 have determined that judgments bear such interest automatically. See, *e.g.*, *Westport Recovery Corp. v. Batista*, 965 So. 2d 1189, 1190 (Fla. Dist. App. 2007); *Olcott Intern. v. Micro Data Base Systems*, 793 N.E.2d 1063, 1079 (Ind. App. 2003); *Office of Attorney General of Texas v. Lee*, 92 S.W.3d 526, 528 (Tex. 2002).

In addition to these state court authorities, we note that federal authorities generally hold that postjudgment interest accrues automatically in federal courts. See *Grimsley v. MacKay*, 93 F.3d 676, 678 (10th Cir. 1996) ("Post-judgment interest automatically accrues from the date of judgment even absent an express statutory provision so providing or express inclusion in the judgment itself."); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 244 F. Supp. 2d 1250, 1275 (D. Kan. 2003) ("The law is clear . . . that plaintiffs are entitled to post-judgment interest . . . despite their failure to request such an award in the pretrial order.").

The KCC relies on *Feaster Trucking Services, Inc. v. Kindsvater, Inc.*, 460 F.2d 180 (10th Cir. 1972), to support its argument. The companies emphasize, however, that *Feaster* did not involve a determination of whether postjudgment interest should be automatically awarded, but rather involved a challenge to the interest rate used to calculate an award of postjudgment interest. See 460 F.2d at 184. This is obviously not the issue framed here. Moreover, the only other authority relied upon by the KCC dealt with the issue of waiver in the context of prejudgment interest and, thus, is also

inapplicable here. See *Clinton v. Joshua Hendy Corporation*, 264 F.2d 329, 334 (9th Cir. 1959).

The KCC's argument is wholly unpersuasive to this court in light of the general rule and the inapplicability of the cases relied upon by the KCC. We hold that any entitlement to postjudgment interest under K.S.A. 16-204 attaches automatically and was not waived by the companies' failure to previously plead or otherwise request such interest. Thus, the district court did not err in rejecting the KCC's waiver argument, and we affirm this aspect of the district court's judgment.

### *Were the Companies Entitled to Interest on KUSF Restoration Payments?*

We embrace at the outset the fundamental principle that the loss of the use of money ought to be compensated, whether occasioned by delay or default of an ordinary citizen or the State or one of its political subdivisions. *Shapiro v. Kansas Public Employees Retirement System*, 216 Kan. 353, 357, 532 P.2d 1081 (1975). It is beyond question that K.S.A. 16-204 authorizes the assessment of postjudgment interest against the State and any agency or political subdivision of the State. *City of Lenexa v. Board of Johnson County Comm'rs*, 237 Kan. 782, 786-87, 703 P.2d 800 (1985). The statute provides in material part:

"Except as otherwise provided in accordance with law, and including any judgment rendered on or after July 1, 1973, against the state or any agency or political subdivision of the state:

. . . .

"(d) Any judgment rendered by a court of this state on or after July 1, 1986, shall bear interest on and after the day on which the judgment is rendered at the rate provided by subsection (e)." K.S.A. 16-204.

We also embrace the rationale and holding of the court in *Greenhaw*, that a specific amount of money need not be stated in the judgment in order to trigger postjudgment interest liability under K.S.A. 16-204, so long as the judgment is a final determination of the rights of the parties in the action and specifies a "readily determinable" sum. 245 Kan. at 70-71. We view the ultimate issue in

this appeal as whether the judicial outcome in *Bluestem I* was a final determination of the rights of the parties in the action.

Obviously, the district court also embraced *Greenhaw* and believed that there had been a final determination of the rights of the parties with "specific sums of money being paid to [the companies]." The error inherent in this finding, however, is apparent from the court's own statements as to the cause of finality; it was not merely the judicial outcome, but rather "the effect of the Court's orders *and the actions of the Commission*" that resulted in monetary restoration. In other words, it was not until the KCC determined to restore prior payment reductions that its obligations became final and definite. This key aspect of the district court's reasoning is clarified by this excerpt from its memorandum decision:

> "The claim of the Commission that [the companies] waived the right to seek interest fails, because *the issue of whether interest would be owed did not arise until the Commission elected to return of a fixed amount* to the Petitioners. The Court recognizes that there were disputes and disagreements as to the amount due as a refund to some companies. However, *refund payments by the Commission made the amounts reasonably clear, definite, and established the rights and obligations of the parties.* Since neither the Commission nor the Petitioners challenged the amount of the refunds, this constitutes the final determination of the rights of the parties." (Emphasis added.)

Clearly, the district court recognized that there was no final, definite adjudication of the rights of the parties by reason of the prior district court action or this court's review thereof, but rather any finality and definiteness was achieved only upon the KCC's action on remand. For this reason alone, postjudgment interest under K.S.A. 16-204 was not triggered by the prior judgments of either the district or appellate court.

We believe the lack of finality of the district court's judgment and this court's mandate and remand is also clearly apparent from the language in this court's opinion in *Bluestem I*. We believe this court made quite clear that the KUSF adjustments were incorrect, but it was contemplated that the KCC should address the proper calculation of such adjustments on remand. The opinion stated in material part:

"We agree with the district court's interpretation of the statute in question; it is unambiguous and directs that these funds are to be distributed based on embedded costs.

". . . [W]e think the Commission needs to reassess the issue of whether the KUSF funds are being distributed on a competitively neutral basis as required by law and, therefore, remand that matter to the Commission for further proceedings.
. . . .

"The district court rescinded the Commission's order allowing a per-line distribution of KUSF funds effective March 1, 2003. The court also ordered Commission to examine the costs of all qualified telecommunications entities providing local service to determine KUSF distributions. . . .
. . . .

"This subset of LECs must have their KUSF distribution computed on their embedded costs, revenue requirements investments, and expenses. . . .
. . . .

"We believe the Commission must take a look at this matter again especially in light of our ruling upholding the district court's interpretation of K.S.A. 66-2008(e)." *Bluestem I*, 33 Kan. App. 2d at 818-28.

We agree with the KCC's characterization of our mandate; we reversed the KCC's previous order because the KUSF adjustments had not been based on the statutory criteria. On remand, "[t]he Commission could have approached the courts' determination in two alternative ways: (1) recalculate all the rural telecommunication companies' embedded costs, revenue requirements, investments, and expenses; or (2) simply return the money." Given this latitude on remand, there was simply no finality resulting solely from the judgment of the district court or this court's mandate. The *Greenhaw* requirement that postjudgment interest is payable if there has been a final determination of the rights of the parties in the action specifying a "readily determinable" sum was clearly not present here. Until the KCC determined which of the two alternate approaches to its obligations would be selected, the rights of the parties were not yet finalized.

We reverse the district court's award of postjudgment interest under K.S.A. 16-204 based on the circumstances presented.

The judgment of the district court is affirmed in part and reversed in part.