Standridge, J.:
In 2011, Robert K. Miller was terminated pursuant to K.S.A. 19-431(a) by the Board of County Commissioners of Wabaunsee County (Board) from his position as the county appraiser following several performance-related issues. Miller filed an administrative appeal with tire Property Valuation Division of the Kansas Department of Revenue (PVD), which overturned his termination on grounds that the Board had breached its written employment agreement with Miller. On review, the district court concluded that the PVD lacked authority to consider or decide a breach of contract claim because its sole authority was to review die Board’s action under K.S.A. 19-431(a). As a result, the court vacated the PVD Is order and remanded the case for the PVD to review the propriety of Miller’s termination under the criteria set forth in the statute. On remand, the PVD upheld Miller’s termination as proper under K.S.A. 19-431(a). The district court affirmed this decision. On appeal, Miller requests reversal of the district court’s remand order and reinstatement of the PVD’s original order overturning his termination. Finding no error, we affirm the district court’s order affirming the decision of the PVD holding Miller’s termination was proper under the applicable statute.
Facts
In 1999, the Board appointed Miller to the position of Wabaun-see County Appraiser. The Board subsequently reappointed Miller to a 4-year term in 2001, 2005, and 2009. Miller signed a written employment agreement with the Board upon each appointment. The most recent agreement provided that Miller would serve as tire Wabaunsee County Appraiser for a 4-year term from July 1, 2009, through June 20, 2013, or until a successor was appointed. The agreement also provided that the Board could remove Miller as county appraiser prior to the expiration of this term according to the procedures and standards set forth in K.S.A. 19-431(a).
Ervan Stuewe is a member of the Board and has held that elected office since 2003. James Súber and Rodney Allen are the *647 other two members of the Board. On March 14, 2011, the Board met with Miller in executive session and provided him with the following written statement:
“We have had concerns about your office for some time and it seems that things never get settled down. You have a high employee turnover, employees have not been trained and tasks have not been completed on time or just barely on time. When issues are brought to your attention it appears that your employees are made to suffer for speaking out. There have been issues about use of leave time, clocking out for lunch and on duty over use of a cell phone. At this point, our consensus is that it would be in the best interest of Wabaunsee County for you and the County to part ways. Before taking any employment action, we will give you the option to resign. We are open to negotiating a mutually agreeable separation agreement including a reasonable severance pay package. After this closed session, it is our intention to go back into the open meeting and vote whether or not to place you on paid suspension status until next Monday when we expect you to give us your decision. Should you wish to avoid that, you can choose to take voluntary leave until next Monday.”
After providing the written statement to Miller, Commissioner Súber read the contents of the document out loud. Miller was given an opportunity to respond to the performance issues raised in the letter but chose not to, except to say that he would not resign.
Miller brought his attorney with him to the executive session that was held prior to the Monday meeting held on March 21,2011. Although the executive session was planned to last 30 minutes, the session ended after 10 minutes. The Board then opened the meeting up to the public. In this open meeting, the Board voted 3-0 to adopt Order #1 concerning the employment of Miller and, pursuant to the provisions of K.S.A. 19-431(a), terminated Millers employment. The reasons for termination set forth in Order #1 were:
“1. The appraiser has failed or neglected to perform the duties of his office by not providing adequate training and supervision to his employees.
i. Several of the offices!’] recent employees charged with taking care of personal property have left the office or been fired. They expressed concerns about proper training.
ii. The current personal property employee was provided no direct training by the appraiser, was instructed to call other counties to figure out her duties, and missed a deadline to switching property over between two years due to lack of training.
*648 iii. The County Clerk has for several years had to assist the appraiser's] office to obtain annual certified values and she has had to train employees of the appraiser.
iv. The appraiser has failed to review and audit the work of his employees.
v. Compared to other offices of Wabaunsee County tire appraiser’s office has a high rate of turn over [sic].
“2. The appraiser has failed or neglected to perform the duties of his office by spending work time taking or making excessive personal phone calls for . long periods during the day. Most of these calls were made in an open office [within] hearing distance of his employees that has also lowered their productivity.
“3. The appraiser violated Wabaunsee County work policies by taking more personal leave than he was allocated.
“4. The appraiser violated Wabaunsee County work policies by not clocking in and out as directed.”
Miller appealed the Board’s decision to the PVD pursuant to K.S.A. 19~431(a). Following a 3-day administrative evidentiary hearing, the PVD’s hearing officer concluded that Miller’s termination was not proper because the Board had breached its written employment agreement with Miller by failing to follow the procedure set forth in Wabaunsee County’s guidelines for discipline of county employees. Given this breach, the PVD’s hearing officer declined to consider whether Miller’s termination was proper under K.S.A. 19-431(a) and ordered that Miller be reinstated as county appraiser and paid “all salary and benefits” since the date of his termination.
After the Board’s motion for reconsideration was denied, it sought judicial review by the district court. The district court concluded that the PVD lacked statutory authority to hear or decide a breach of contract claim because its sole authority was to review the Board’s action under K.S.A. 19-431(a). As a result, the court vacated the PVD’s order and remanded the case in order for the PVD to review Miller’s termination under K.S.A. 19-431(a).
While the administrative appeal was pending, Miller filed an action in district court against the Board, the individual Board members, Wabaunsee County, and the Wabaunsee County Clerk (collectively defendants), claiming breach of contract and various torts relating to his termination. In response, the defendants- filed a motion for judgment on the pleadings requesting the court to *649 dismiss all tort claims. The district court granted the motion and dismissed those claims. Miller later stipulated to a dismissal without prejudice with regard to his breach of contract claim.
Following remand of the administrative appeal, the PVD found sufficient evidence in the record to support tire Board’s finding that it was satisfied Miller had failed or neglected to properly perform the duties of the office. Accordingly, the PVD issued an order holding that Miller’s termination was proper under K.S.A. 19-431(a). On review, the district court ultimately affirmed the decision rendered by tire PVD.
Analysis
As he did with the district court, Miller seeks relief from the PVD’s October 9', 2013, order deeming Miller’s termination proper under K.S.A. 19’-431(a). In order to help clarify the nature and scope of the PVD actions challenged by Miller, we find it helpful to differentiate between the scope of the Board’s authority to terminate a county appraiser and the scope of the PVD’s authority to review the Board’s decision as set forth in K.S.A. 19-431(a), which governs the administrative process to be used when the Board makes a decision to terminate a county appraiser.
The board of county commissioners has statutory authority to appoint a county appraiser to a 4-year term. K.S.A. 2014 Supp. 19-430(a). The board of county commissioners also has statutory authority to remove a county appraiser prior to the expiration of the 4-year term. Such removal must be accomplished according to the procedures and standards set forth in K.S.A. 2014 Supp. 19-431(a). More specifically, the board of county commissioners may enter an order terminating the county appraiser from office only when it appears “by evidence satisfactory to such board that the appraiser of such county or district has failed or neglected to properly perform the duties of office.” K.S.A. 2014 Supp. 19-431(a). The order of termination must state the reasons for such termination and must be served upon the appraiser. Upon service, the county appraiser is immediately divested of all powers associated with the office and the board of county commissioners must appoint a tern- *650 porary appraiser to discharge the duties of the office until the vacancy is permitted to be filled. K.S.A. 2014 Supp. 19-431(a).
If timely requested, an order from the board of county commissioners that terminates a county appraiser from office is subject to review by the PVD. Upon such a request, the PVD is required to conduct a hearing in accordance with the provisions of the Kansas Administrative Procedure Act (KAPA). K.S.A. 2014 Supp. 19-431(a). The KAPA authorizes the office of administrative hearings to assign an officer to preside over the hearing. K.S.A. 2014 Supp. 77-514(a). At this hearing, tire assigned presiding officer shall make inquiry as to all facts connected with the termination. The presiding officer is not “bound by technical rules of evidence” and “shall give the parties reasonable opportunity to be heard and to present evidence.” K.S.A. 77-524(a). If, after the hearing, the presiding officer determines that the appraiser should be terminated, then the presiding officer shall issue an order removing such appraiser. A copy of such order shall be sent to the board of county commissioners, which is then required to be recorded in full upon the journal of the board. The appraiser office shall become vacant immediately upon service of this order, and it is at this point that tire board of county commissioners becomes authorized to appoint an eligible Kansas appraiser to fill the vacancy. K.S.A. 2014 Supp. 19-431(a).
A. The Board’s authority to terminate the employment of a county appraiser
Relying on this statutory framework, Miller first argues that K.S.A. 2014 Supp. 19-431(a) does not provide the Board with the necessary legal authority to terminate him; therefore, the Board’s order of termination had no legal effect on his employment. Specifically, Miller contends the PVD posttermination hearing process described in K.S.A. 2014 Supp. 19-431(a) is the exclusive procedure for terminating the employment of a county appraiser in Kansas. Contrary to Miller’s argument, however, tire plain and unambiguous language in K.S.A. 2014 Supp. 19-431(a) clearly authorizes the Board to enter an order terminating an appraiser upon a finding the appraiser failed or neglected to properly perform the duties of *651 office. The order must state the reasons for the termination and be served on the appraiser.
Here, the Board entered an order on March 21, 2011, terminating Miller based on its finding that he had failed or neglected to properly perform tire duties of office. The Board’s order then specifically set forth the reasons for his termination. Thereafter, Miller timely requested and received a hearing before the PVD, which initially reversed the termination but on remand from the district court ultimately affirmed the Board’s decision. The fact that the PVD is vested with the authority to conduct a posttermination hearing at which it makes “inquiry as to all facts” connected with the termination does not divest the Board of its authority to terminate the county appraiser in the first instance. See K.S.A. 2014 Supp. 19-431(a). Accordingly, Miller’s first argument is without merit.
B. The PVD’s alleged failure to consider the progressive discipline policy
Next, Miller argues that the PVD terminated his employment notwithstanding undisputed evidence that the Board failed to comply with the progressive discipline policy set forth in the Wabaun-see County Personnel Policies and Guidelines. Based on the manner in which Miller has framed this issue on appeal, it is unclear whether Miller is arguing (1) that the PVD erred as a matter of law by deferring to the Board’s decision to bypass the progressive discipline policy or (2) that the PVD’s order removing him from the county appraiser position was not supported by substantial competent evidence presented at the hearing. Given this ambiguity, we will consider both of these issues.
1. Standard of review: deference or de novo?
Miller appears to assert the PVD erroneously interpreted the law by applying the wrong standard of review to make its decision. Miller contends that K.S.A. 19-431 required tire PVD to review tire Board’s order de novo, but the PVD simply considered whether the evidence presented supported the Board’s decision to terminate his employment.
*652 As Miller asserts, the PVD expressly construed K.S.A. 19-431 to preclude it from reviewing the Board’s termination order de novo:
“The language of K.S.A. 19-431(a) does not suggest that the presiding officer should substitute his/her judgment for that of the Board; it does not allow de novo review or any type of heighted scrutiny by the [PVD] of the facts relied upon by the Board. Rather, it dictates deference to the judgment and decision of the Board.”
Determining the proper standard of review to be utilized by the PVD in reviewing the termination of a county appraiser under K.S.A. 2014 Supp. 19-431(a) requires us to interpret that statute. Interpretation of a statute is a question of law over which appellate courts have unlimited review. Jeanes v. Bank of America, 296 Kan. 870, 873, 295 P.3d 1045 (2013). The fundamental rule of statutory interpretation is that the intent of the legislature is dispositive if it is possible to ascertain that intent. The language of a statute is the primary consideration in ascertaining the intent of the legislature because the best and only safe rule for determining the intent of the creators of a written law is to abide by the language that they have chosen to use. Courts therefore look to the plain and unambiguous language of a statute as the primary basis for determining legislative intent. See Merryfield v. Sullivan, 301 Kan. 397, Syl. ¶ 2, 399, 343 P.3d 515 (2015).
Given the language of K.S.A. 2014 Supp. 19-431(a), we conclude the legislature clearly intended the PVD to give some degree of deference to the Board’s termination decision. Significantly, the statutory language readily distinguishes between the duties, obligations, and authority conferred upon a board as compared to the PVD:
• The board is authorized to enter an order terminating the county appraiser from office if it appears by evidence satisfactory to the board that the county appraiser failed or neglected to properly perform the duties of office. The county appraiser is divested of all power upon service of this order.
• The board is authorized to appoint a temporary appraiser to discharge the duties of the office until the vacancy is filled.
*653 • The PVD is authorized to conduct a hearing on the termination if timely requested.
• The PVD is authorized to make inquiry as to all facts connected with the county appraiser s termination.
• The PVD is authorized to render an order removing the county appraiser if it determines that the appraiser should be terminated. The office of the county appraiser shall become vacant immediately upon service of the PVD order of removal.
Miller relies on the authority statutorily conferred upon the PVD to support his argument that the legislature intended the PVD to review a board’s termination order de novo. To accept Miller’s argument, however, we are required to disregard the language in drat same subsection of the statute establishing the standard of review against which the legislature clearly intended termination decisions to be measured: “evidence satisfactory to such board that the appraiser of such county or district has failed or neglected to properly perform the duties of office.” (Emphasis added.) K.S.A. 2014 Supp. 19-431(a). The addition of the phrase “satisfactory to such board” compels us to conclude that a county appraiser can be terminated only if the board is satisfied that there is evidence the county appraiser has failed or neglected to properly perform the duties of office. There appears to be no other reason for the legislature to have added the phrase, and we cannot construe the statute in a manner that renders any aspect of the language to be meaningless. See In re Tax Protest of United Ag Services, 37 Kan. App. 2d 902, 908, 159 P.3d 1050, rev. denied 285 Kan. 1174 (2007).
For the reasons stated above, we conclude the legislature did not intend the PVD to substitute its judgment for that of the Board. As such, we hold the PVD’s review was limited to (1) conducting a hearing on the county appraiser’s termination; (2) making inquiry as to all facts connected with such termination; and (3) rendering an order removing the county appraiser if the PVD determined that (a) the facts presented at the hearing support the Board’s finding of evidence satisfactory to the Board that the county appraiser failed or neglected to properly perform the duties of his position;
*654 (b) the Board entered an order stating the reasons for the termination; and (c) the order was served upon Miller.
2. Substantial competent evidence
Judicial review of an order entered by the PVD is governed by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. An appellate court exercises the same statutorily limited review of the agency’s decision as does the district court, so review of the agency’s decision is the same as if it had been appealed directly to this court. Kansas Dept. of Revenue v. Powell, 290 Kan. 564, 567, 232 P.3d 856 (2010). The burden of proving the invalidity of agency action is on tire party asserting invalidity, which in this case is Miller. See K.S.A. 2014 Supp. 77-621(a)(l).
Construing Miller’s request for relief as a claim of insufficient evidence, we review the factual determinations of the PVD in light of the record as a whole to determine whether those findings are supported by substantial competent evidence. See K.S.A. 2014 Supp. 77-621(c)(7).
“ ‘[I]n light of the record as a whole’ means that tire adequacy of the evidence in tire record before the court to support a particular- finding of fact shall be judged in light of all tire relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of tire witness and the agency’s explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of tire record as a whole, the court shall not reweigh the evidence or engage in de novo review.” K.S.A. 2014 Supp. 77-621(d).
Applying this standard of review, we conclude the facts presented at the hearing support the PVD’s finding of evidence sufficient to have satisfied the Board that Miller failed or neglected to properly perform the duties of his position.
At the hearing, the Board commissioners testified at great length about the significant performance problems Miller had throughout his tenure as county appraiser and that it was these problems that formed the basis for their decision to terminate his employment. These included failing to train and supervise employees in the of *655 fice, failing to ensure the quality of the work coming out of the appraiser’s office, disputing the need to clock in or out or otherwise keep track of his working time, claiming time worked when he was out of tire office on personal matters, making excessive and disruptive personal phone calls while working in the office, and taking more personal leave than he was allotted.
In addition to the commissioners, many current and former employees working under Miller’s supervision testified about Miller’s failure to provide them the training they needed to properly perform their jobs. Miller’s employees also testified that he did not review their work. As a result, when the work was submitted to the county clerk, errors were discovered that Miller could have and should have identified and corrected.
Commissioner Stuewe testified that employees in the county appraiser’s office complained about the lack of supervision and direction they received from Miller. Stuewe also received complaints from employees in the county treasurer’s office and the county clerk’s office about the quality of the work product submitted to them by the county appraiser’s office. Stuewe said he received these complaints “on a constant basis from the very beginning [s]o I knew that things were not always getting done as they should have been done.”
There is also a great deal of evidence in the record to establish that Miller was engaged in a “constant battle” with the Board over whether he was required to clock in and out when he worked, as other county employees were required to do. The Board first addressed the issue of clocking in and out with Miller in 2005. Miller told the Board he did not believe he was required to clock in and out when he worked, but the Board disagreed and instructed him that he was required to keep track of his working time. Stuewe testified that the Board repeatedly directed and redirected Miller to clock in and out. Stuewe testified that he also spoke to Miller one-on-one about the need to clock in and out when he was working.
Jennifer Savage is the Wabaunsee County Clerk and has served in that capacity since 2001. Savage has worked in the clerk’s office since 1981. Savage testified that when Miller did keep track of his *656 time, the time sheets were not accurate. She gave several examples of occasions when Miller told Savage he was going home to bale hay or go hunting with friends. When Savage checked Miller s time sheets, Miller had claimed to be working the entire day.
In late 2010, an issue arose regarding Miller taking more personal time off than he had been allocated. Savage testified Miller had used more personal leave than he had earned. Miller admitted that this was so. Stuewe testified that the situation was brought to the Board’s attention and was later discussed with Miller.
On February 1, 2011, Miller was clocked in for 2 hours in the morning. When Miller turned in his time sheet, he made a handwritten note that he worked from home for an additional 6.25 hours that day. Savage checked the activity records for Orion, a computer program used by the appraiser’s office. The records reflect that on February 1, 2011, Miller was using Orion during the 2-hour period he was clocked in, but he- did not access the program at all tire rest of tire .day.
The transcript from the PVD hearing also -reflects that employees in the appraiser’s office and other county offices on the second floor of the courthouse repeatedly complained to Stuewe that Miller spent excessive amounts of time on personal phone calls. One employee, whose desk was next to Miller’s, testified that during the time she worked there, Miller made 12 to. 15 personal phone calls per day on his cell phone and on the office line. Another employee testified that Miller spent more than 2 hours a day in the office on personal calls. Yet another employee said tire phone calls made it difficult to do her job because Miller was unavailable to help her or taxpayers in the office. She also said that “sometimes they weren’t positive calls. Sometimes he was upset over them, so there was a phone slamming or slamming the phone shut or slamming the phone down and just kind of interrupting because I could hear it out from the front.”
Based on all of these performance problems, the Board did not give Miller a merit increase in 2000, 2008, and 2009. Significantly, he was one of only a few county employees who did not receive a merit increase. In January 2010, the Board placed Miller on probation for 4 months. Miller was placed on probation because of an *657 accumulation of performance issues, “plus the fact that that office had sent out personal property notices late.” At the same time, the Board repeated its directive that Miller make sure he clocked in and out and “provide us 40 hours a week in the office.” At this point, the Board also rescinded Miller s 1.5% cost of living increase in salary.
Stuewe testified that by early 2011, the ongoing nature of Miller’s deficient job performance finally caused a complete breakdown in trust between the Board and Miller. This lack of trust permeated throughout the entire courthouse. Stuewe said the other county offices and the appraiser’s office “weren’t working together. People felt like [Miller] was getting away with things that he shouldn’t be. It was not giving other employees a lot of confidence in us, I guess. It just wasn’t a good working relationship.” In early 2011, Commissioner Súber informed Miller that he would not receive a merit raise. When Miller asked why, Súber responded that it was because Miller had used too much leave, had time clock issues, and had disgruntled employees.
Miller then confronted one of tbe two employees working in his office and asked if he had “disgruntled employees.” The employee felt “cornered.” Shortly thereafter, the employee approached Stuewe and told him she was “extremely upset” by this confrontation. Stuewe characterized this employee as an “excellent employee.” Stuewe testified that this conversation “pushed [him] over the edge.” Stuewe explained why his dissatisfaction with Miller finally reached a breaking point:
“Well, I live in a small community. I knew most of the people. In fact, I know all the people in the courthouse very well. I saw people that were hurt because of things that happened, people that were frustrated. I didn’t feel like the taxpayers were being served. There was work that wasn’t being performed. There were people in other offices that weren’t getting work funneled to them as they needed to. They, in turn, looked bad. And I just personally had lack of trust. I did not feel confident in—in what Mr. Miller was doing, and I felt like there’s been damage that—that couldn’t be repaired unless someone else was in that office.”
In his brief, Miller does not dispute any of the veracity of any of the facts in the record. Nevertheless, he claims he is entitled to relief from the PVD’s order of termination because these facts, *658 when viewed in light of the record as a whole, do not amount to substantial competent evidence sufficient to support the PVD’s decision to terminate him. More specifically, Miller argues the PVD failed to consider the Board’s failure to utilize the county employee progressive discipline policy in deciding that tire Board’s decision to terminate his employment was proper. Miller argues the PVD’s failure in this regard is a breach of its statutory duly to make inquiry as to all facts connected with his termination. We are not persuaded by Miller’s argument. As a preliminary matter, the PVD’s initial order finding in favor of Miller makes clear that it did inquire into the Board’s failure to utilize the progressive discipline policy as set forth in the Wabaunsee County Personnel Policies and Guidelines. The statute requires only inquiry into the facts connected with the termination, which the PVD did in this case.
Notably, however, we would not have granted relief in favor of Miller even if the PVD had failed to make inquiry into the progressive discipline policy. As tire district court held, Miller’s claim of wrongful termination based on the Board’s failure to utilize the progressive discipline policy is a breach of contract claim separate and distinct from the statutory process and, as such, falls outside the scope of the PVD’s limited jurisdiction as set forth in K.S.A. 2014 Supp. 19-431.
Finally, even if the progressive discipline policy was relevant to the statutory criteria, was within tire scope of the PVD’s limited jurisdiction, and was not actually considered by the PVD as part of its review, we would deem any failure by the PVD to consider the policy to be harmless error that does not serve to invalidate the PVD’s order removing Miller from office. See K.S.A. 2014 Supp. 77-621(e) (in deciding whether to grant relief on judicial review of a challenge to the validity of agency action, “due account shall be taken by the court of the rule of harmless error”). As noted above, Miller does not dispute the veracity of any of the factual findings made by the PVD in its order. Instead, he appears to argue that the PVD’s alleged failure to consider whether the Board complied with the progressive discipline policy is so significant that it essentially undermines the substantial nature of the evidence supporting the PVD’s decision. We disagree. We have considered the evidence *659 in the record that supports and the evidence that detracts from the PVD’s findings. See K.S.A. 2014 Supp. 77-621(d). In so doing, we find substantial evidence supports the PVD’s finding of evidence satisfactory to the Board that Miller failed or neglected to properly perform the duties of his position as county appraiser.
C. Salary and benefits
Miller argues the district court erroneously held he was not entitled to be fully compensated from March 21, 2011, to June 30, 2013, the date his appointment expired. Relying on language in Kennedy v. Board of Shawnee County Comm’rs, 264 Kan. 776, Syl. ¶ 2, 958 P.2d 637 (1998), Miller claims the Board’s decision to terminate him should have been deemed a suspension with full salary and benefits pending conclusion of the K.S.A. 19-431(a) posttermination administrative proceedings, which did not happen until after his term expired.
There, Kennedy was appointed county appraiser in August 1992 to fill the unexpired term of another. The term was to end June 30, 1993. The board of county commissioners voted on January 4, 1993, to reappoint Kennedy to a 4-year term to begin July 1,1993. Two new county commissioners were sworn in, and the newly configured board voted on January 11, 1993, to rescind the earlier resolution to appoint Kennedy to a 4-year term beginning July 1, 1993. The board had a change of heart and in April 1993 voted to appoint Kennedy to a new 4-year term.
Reversing course once again, the board voted to terminate Kennedy on May 27, 1993. The board stated that the termination was based on “ ‘failure or neglect and for other cause.’ ” 264 Kan. at 778. The board also voted to rescind the April resolution appointing Kennedy to a 4-year term. The PVD upheld the removal.
Kennedy filed a petition for judicial review in the district court. The issues on review were: (1) whether the agency’s findings of fact were supported by substantial evidence; (2) whether Kennedy had an enforceable agreement to serve as county appraiser for a 4-year term beginning July 1, 1993; and (3) whether Kennedy’s termination was impermissibly based on retaliation for exercise of his First Amendment rights. The district court and the Kansas Su *660 preme Court rejected all of Kennedy’s arguments and upheld his termination. 264 Kan. at 802-03.
Miller focuses on the Kansas Supreme Court’s discussion of Kennedy’s second issue. The thrust of Kennedy’s argument was that the board had committed itself to appointing him to a 4-year term beginning July 1, 1993, and could not later rescind that commitment—even though the board voted to rescind the appointment before the term of the appointment began. Kennedy argued that the board, by its actions, created an implied contract for employment for a 4-year term beginning July 1, 1993. The Supreme Court disagreed, adopting the reasoning of the district court that there could be no implied contract for employment because K.S.A. 19-430 and K.S.A. 19-431 dictated “ ‘the exact manner by which the position both may be filled and exited, precluding, therefore, any implied basis to either obtain it or leave it other than by the terms of the statute.’ ” 264 Kan. at 790. In the court’s view, the county appraiser’s statutory term began on July 1, and no implied contract for employment for the 4-year term could arise out of any promises made and rescinded before that date.
Kennedy filed a separate cause of action in the district court, which was consolidated with the administrative appeal, and in it he raised a constitutional challenge to K.S.A. 19-431. Kennedy argued that the statute was unconstitutional because it did not provide for notice of the reasons for termination and a meaningful opportunity to be heard prior to the termination. The court emphasized its duty to construe a statute in such a manner that preserves its constitutionality. 264 Kan. at 797-98. Although the court observed that K.S.A. 19-431 requires that the board supply notice of the reasons for the termination and provides for a hearing before the PVD, the undisputed facts of the case reflected that the board did not provide any factual reasons for the termination when it passed the resolution terminating Kennedy as county appraiser. The board’s “Order of Termination” attached to resolution stated:
“ ‘The reasons for your termination include but are not limited to foe following: You have failed or neglected to properly perform the duties of the office. The general statutory duties are set forth in K.S.A. 79-1412a. Additional duties are set *661 forth in tire position description for Shawnee County Appraiser. This termination is for such failure or neglect and for other cause.’ ” 264 Kan. at 778.
Given the board did not comply with the requirement in K.S.A. 19-431 to supply notice of the reasons for the termination, the Supreme Court followed the district court’s lead and construed the board’s action to have merely suspended Kennedy’s employment; thus, Kennedy was not actually terminated from employment until the PVD entered its order removing him from office. Construing the notice provided by the board as a suspension in conjunction with the opportunity for Kennedy to be heard at the subsequent evidentiary hearing, the court ultimately held the proceedings as a whole complied with due process requirements. 264 Kan. at 798-800. And consistent with its interpretation of the board’s decision as a suspension, the court affirmed the district court’s decision to grant Kennedy an award of back pay from the date the board suspended him (May 27,1993), until the end of his then-current term (June 30, 1993), which amounted to approximately 1 month’s pay. 264 Kan. at 799, 803. In affirming the district court’s decision to award back pay and benefits, the court specifically noted the district court’s reliance on' the United States Supreme Court’s decision in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).
In Loudermill, the Court considered the extent of pretermination process to be accorded a public employee who can be discharged only for cause. Loudermill was comprised of two cases that were consolidated, both of which involved a complete severance of the employment relationship and allegations of the employees’ fault (lying on an employment application) or deficiency (failure of an eye examination). Like the facts in Kennedy, both of the employees were discharged without any 'opportunity to contest the facts on which their discharges were based. Both had plausible arguments to make that might have prevented their discharge. To that end, one of the employees actually was reinstated after a post-termination hearing. Nevertheless, the district court dismissed both cases for failure to. state a claim for which relief could be granted.
*662 On appeal, the Loudermill Court determined that public employees with a property interest in continued employment have a right to pretermination procedural safeguards based on the constitutional right to procedural due process. The pretermination hearing is “an initial check against mistaken decisions” and “need not definitively resolve the propriety of the discharge.” 470 U.S. at 545. The purpose is to determine whether there are reasonable grounds to believe the charges against the employee are true and support termination. The hearing is necessary but need not be formal. The requirements will depend upon the interests involved and the nature of subsequent proceedings. When coupled with posttermination procedures, the Court held that the public employee is entitled to oral or written notice of the charges, an explanation of the employer’s evidence, and an opportunity to present his or her side of the story. To require more, the Court concluded, would intrude too much on the government’s immediate interest in removing the employee. A pretermination opportunity to respond is all the process that is due. But because the Loudermill plaintiffs alleged they had no chance to respond, the Court ultimately held the district court erred in dismissing the cases for failure to state a claim. 470 U.S. at 545-46, 548.
The facts presented in this case are distinguishable from the facts presented in Kennedy and Loudermill, where the employees were not given an explanation of why the employee was being terminated, evidence to support the termination decision, or an opportunity to present the employee’s side of the stoiy for purposes of an initial check against mistaken facts. Here, the Board provided Miller with written documentation on March 14, 2011, advising him that he could resign or would be terminated in 1 week’s time based on a finding of evidence satisfactory to the Board that Miller failed or neglected to properly perform the duties of his position as county appraiser. The written documentation provided the factual basis supporting the Board’s action in this regard and was served on Miller as required by statute. On March 21, 2011, the Board set aside 30 minutes in order to provide Miller an opportunity to be heard on the termination decision, but Miller opted not to take advantage of that opportunity.
*663 Again, the purpose of a pretermination hearing is to determine whether there are reasonable grounds to believe the charges against the employee are true and support termination. Before the Board entered its order of termination, Miller was provided with the charges against him and given two opportunities to be heard in order to dispute any of the allegations of deficient performance. He did not take advantage of either opportunity. In the words of the United States Supreme Court, to require the Board to have done anything more than it did in this matter before entering its order of termination “would intrude to an unwarranted extent on the government’s interest in quickly removing an unsatisfactory employee.” 470 U.S. at 546. A pretermination opportunity to respond is all the process that is due.
Given Miller had two opportunities to be heard before the Board entered the termination order, we conclude he was not deprived of his right to procedural due process prior to termination, regardless of the posttermination process available to him. Consistent with the standards governing procedural due process, and based on the plain reading of die statute that confers upon the Board the authority to both suspend and terminate a county appraiser, we conclude the Board’s decision to terminate Miller was a final termination decision and not a suspension. As such, Miller is not entitled to full salary and benefits from the time he was terminated on March 14, 2011, to the date the PVD hearing was held or to the date that the PVD’s decision (or appeal from such decision) is final.
Affirmed.
⅞ # #