IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,569

ROBERT K. MILLER,
*Appellant*,

v.

BOARD OF COUNTY COMMISSIONERS, WABAUNSEE COUNTY, KANSAS,
*Appellee.*

SYLLABUS BY THE COURT

1.

When a statute is plain and unambiguous, the court must give effect to its express language, rather than determine what the law should or should not be. A court determines legislative intent by first applying the meaning of the statute's text to a specific situation at issue. A court does not read into the statute words not readily found there.

2.

When the language of a statute is unclear or ambiguous a court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain the statute's meaning.

3.

To construe the words of a statute, a court considers the language and design of the entire statute.

4.

Statutes dealing with the same subject—those that are in pari materia—should be interpreted harmoniously when possible.

1

5.

K.S.A. 2014 Supp. 19-431 does not give a board of county commissioners the authority to immediately end an appraiser's employment, salary, or benefits. Rather, it gives a board of county commissioners the authority to temporarily relieve an appraiser of his or her duties until the director of property valuation decides the appraiser's permanent removal is appropriate, or the appraiser chooses not to request review by the director of property valuation within the statutorily prescribed time limit.

Review of the judgment of the Court of Appeals in 51 Kan. App. 2d 644, 352 P.3d 1053 (2015). Appeal from Wabaunsee County District Court; JEFFREY R. ELDER, judge. Opinion filed March 10, 2017. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is vacated and the case is remanded with directions.

*Robert J. Perry*, of Auburn, argued the cause and was on the briefs for appellant.

*Terelle A. Mock*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *Teresa L. Watson* and *Sarah A. Morse*, of the same firm, were with her on the briefs for appellee.

The opinion of the court was delivered by

MALONE, J.: The facts of this case, as they pertain to the way Miller's employment ended, are not in dispute. The Wabaunsee Board of County Commissioners (Board) appointed Robert K. Miller to serve a 4-year term as Wabaunsee County Appraiser in 2009. His appointment was to last from July 1, 2009, through June 30, 2013.

Upon Miller's appointment, he and the Board signed an employment contract that, in part, set forth the proceedings the Board would follow in the event it had to discipline Miller.

Nearly 2 years into Miller's appointment, on March 14, 2011, the Board met with Miller in an executive session. The Board handed Miller a written note that outlined concerns the Board had about Miller's job performance and informed Miller he could resign or he would be terminated, and that he had until the next week to make his decision. Miller said he would not resign.

On March 21, 2011, the Board again met with Miller in executive session. After this executive session, the Board voted to terminate Miller and stop paying his salary and benefits.

Miller exercised his statutory right under K.S.A. 2014 Supp. 19-431 to have his termination reviewed in an administrative hearing by the director of property valuation (PVD). An administrative law judge (ALJ) was designated to preside over the case pursuant to K.S.A. 77-514. The ALJ heard witnesses and considered evidence over a 3-day hearing. On November 30, 2011, the ALJ ordered the Board to reinstate Miller and award back pay because the Board had failed to follow the disciplinary procedure outlined in the employment contract before terminating Miller.

The Board appealed the decision to the district court, contending that the ALJ should have used a deferential standard of review and that the ALJ did not have authority to consider the employee disciplinary policy outlined in the employment contract because this was not a breach of contract claim. The district court vacated the decision and remanded the case with orders for the ALJ to review the termination without regard for the employment contract and in accordance with the provisions of K.S.A. 2014 Supp. 19-431.

On October 9, 2013, the ALJ considered the evidence again, this time without regard to the Board's failure to comply with the employment contract. The ALJ gave deference to the Board's decision and upheld Miller's termination.

Miller appealed this second ALJ decision to the district court, arguing his termination was not in accordance with K.S.A. 2014 Supp. 19-431 because the Board did not have the final authority to terminate a county appraiser. He also argued the ALJ's decision conflicted with our decision in *Kennedy v. Board of Shawnee County Comm'rs*, 264 Kan. 776, 958 P.2d 637 (1998); the ALJ employed the wrong standard of review when she gave deference to the Board's decision; and, the ALJ should have been permitted to consider the contract between the parties in making her decision. The district court disagreed with Miller and affirmed the termination. Miller then appealed to the Court of Appeals, where the majority affirmed the district court. Judge Atcheson dissented, concluding the ALJ should have applied a de novo—rather than a deferential—standard of review, and Miller was denied due process after his dismissal. *Miller v. Board of Wabaunsee County Comm'rs*, 51 Kan. App. 2d 644, 352 P.3d 1053 (2015).

We resolve this case in favor of Miller under his first argument that K.S.A. 2014 Supp. 19-431 did not grant the Board the final authority to terminate his employment and thereby end his salary and benefits. Thus, we do not need to reach his remaining arguments other than to comment briefly on our holding in *Kennedy*, 264 Kan. 776.

Accordingly, we reverse the majority decision of the Court of Appeals, vacate the judgment of the district court, and remand the case with directions.

ANALYSIS

Miller argues that K.S.A. 2014 Supp. 19-431 did not give the Board the authority to end his employment, salary, and benefits.

4

*Standard of Review and Principles of Statutory Interpretation*

To decide whether Miller is correct, we must interpret K.S.A. 2014 Supp. 19-431. Statutory interpretation raises a question of law over which this court has unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

"When a statute is plain and unambiguous, a court must give effect to its express language, rather than determine what the law should or should not be. *Graham v. Dokter Trucking Group*, 284 Kan. 547, 554, 161 P.3d 695 (2007). We determine legislative intent by first applying the meaning of the statute's text to the specific situation in controversy. See *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014) (first task in construing statute is to ascertain legislative intent through analysis of language employed, giving ordinary words their ordinary meanings). A court does not read into the statute words not readily found there. *Whaley* [*v. Sharp*], 301 Kan. [192, 196, 343 P.3d 63 (2014)]; *Graham*, 284 Kan. at 554; see *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 525, 154 P.3d 494 (2007). When the language is unclear or ambiguous, the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain the statute's meaning. *Whaley*, 301 Kan. at 196." *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

*Discussion*

K.S.A. 2014 Supp. 19-431(a) governs the removal of a county appraiser. It provides, in relevant part:

"Whenever it shall be made to appear to the board of county commissioners of any county or the district board of an appraisal district by evidence satisfactory to such board that the appraiser of such county or district has failed or neglected to properly perform the duties of office, by reasons of incompetency or for any other cause, the board shall enter upon its journal an order suspending or terminating the county or district appraiser from office. Such order shall state the reasons for such suspension or termination, and upon the service of any such order upon the appraiser suspended or

5

terminated such appraiser shall at once be divested of all power as county or district appraiser and shall immediately deliver to the person appointed to discharge the duties of the office of such appraiser, all books, records and papers pertaining to the office. The board of county commissioners or district board shall appoint a temporary appraiser to discharge the duties of the office until the suspension is removed or the vacancy filled, and the person so appointed shall take the oath of office required by law and thereupon such person shall be invested with all of the powers and duties of the office.

"Within 15 days after service of an order of suspension or termination, the appraiser may request a hearing on the order before the director of property valuation. Upon receipt of a timely request, the director of property valuation shall conduct a hearing in accordance with the provisions of the Kansas administrative procedure act. . . . At the hearing the director of property valuation shall make inquiry as to all facts connected with such suspension or termination, and if after such inquiry is made the director of property valuation shall determine that the appraiser suspended should be removed permanently and such appraiser's office declared vacated or should be terminated, then the director of property valuation shall render an order removing such appraiser."

The Court of Appeals majority held that the plain meaning of these words gives a board of county commissioners clear authority to terminate a county appraiser and thus, the Board here had the authority to immediately end Miller's employment, salary, and benefits upon that termination. *Miller*, 51 Kan. App. 2d at 663. Indeed, the language provides:

"the board shall enter upon its journal an order suspending or *terminating* the county or district appraiser from office." (Emphasis added.) K.S.A. 2014 Supp. 19-431(a).

The word "terminating" clearly and explicitly gives a board of county commissioners the power to terminate a county appraiser. However, Miller does not argue that the Board lacked the power to terminate him—he simply disagrees with the panel majority on what effect this termination power has on his salary and benefits during

6

his requested appeal. While the panel majority held that the termination power gives a county board the authority to immediately end an appraiser's employment and thus the corresponding salary and benefits, Miller argues that the termination does not have this effect until the PVD decides the appraiser should be terminated or unless the appraiser does not request review of the decision by the 15-day statutory deadline.

Initially, Miller's argument seems unpersuasive because "terminate" has a plain and unambiguous meaning—to end. However, this provision of the statute is followed by additional language that creates ambiguity regarding the effect of termination:

> "Within 15 days after service of an order of suspension or termination, the appraiser may request a hearing on the order before the director of property valuation. Upon receipt of a timely request, the director of property valuation shall conduct a hearing in accordance with the provisions of the Kansas administrative procedure act. . . . At the hearing the director of property valuation shall make inquiry as to all facts connected with such suspension or termination, and if after such inquiry is made the director of property valuation shall determine that the *appraiser suspended* should be removed permanently and such appraiser's office declared vacated or should be terminated, then the director of property valuation shall render an order removing such appraiser." (Emphasis added.) K.S.A. 2014 Supp. 19-431(a).

This additional language creates ambiguity because it seems to refer to the appraiser who was suspended or terminated by a board of county commissioners and then elected review before the PVD as the "appraiser suspended," with no reference to an "appraiser terminated." We see at least three possible ways to explain the absence of this reference:

1. The provision details only what the PVD should do with regard to an appraiser who was suspended and does not mean to instruct the PVD on what to do with an appraiser who was terminated.

7

2. The provision details what the PVD should do with regard to an appraiser who was suspended or an appraiser who was terminated, but the appraiser is considered only suspended in either circumstance.

3. The provision details what the PVD should do with regard to an appraiser who was suspended or an appraiser who was terminated, but the word "suspended" only modifies the word "appraiser" when it instructs the PVD on what it may do with a suspended appraiser.

The first reading is problematic for two reasons. First, it would mean that the provision begins by instructing the PVD to "make inquiry as to all facts connected with such suspension or *termination*," and would then finish by only directing the PVD on what to do regarding a suspended appraiser. Because the statute would give instruction regarding a suspended appraiser, it seems unreasonable to assume the legislature meant to leave out any instruction on what the PVD should do with a terminated appraiser. Second, and more significantly, this construction would interpret the statute to direct the PVD to decide whether a suspended appraiser "should be removed permanently and such appraiser's office declared vacated" or "should be terminated." We see no discernable difference between removing an appraiser permanently and terminating an appraiser and thus, we cannot read the statute in this way. To do so would be to presume the legislature intended to include meaningless language in the statute, a violation of one of our basic canons of interpretation. For these reasons, this reading is incorrect.

This takes us to the remaining two constructions, both of which interpret the provision to contemplate a suspended and a terminated appraiser but differ in understanding when the word "suspended" modifies the word "appraiser." One of these readings, the second of the three that we set out above, would understand the word "suspended" to modify the word "appraiser" throughout the sentence, regardless of

8

whether a board initially suspended or terminated the appraiser or which of the two PVD decisions the statute describes. The third reading would understand the word "suspended" to modify the word "appraiser" only when describing a PVD's decision that the appraiser "should be removed permanently and such appraiser's office declared vacated," and would not modify the word "appraiser" when the PVD considers whether the appraiser "should be terminated."

We find the difference in these two constructions important because one supports Miller's construction—that "terminate" does not end an appraiser's employment, salary, and benefits but just temporarily relieves an appraiser of his or her duties—and one seems to make the definition even more ambiguous and the statutory review process more onerous. If we interpret the statute as we have laid out in the second construction listed above, a board's termination power amounts to less than what the Board here suggests because such construction regards a terminated appraiser, who elected review, as only "suspended." It makes little sense for the statute to refer to an appraiser whose employment, salary, and benefits have already ended as an appraiser "suspended."

If we instead construe the statute as we set out in the third construction listed above, the appraiser is only considered "suspended" when the statute describes a PVD decision that the appraiser "should be removed permanently and such appraiser's office declared vacated." Because such a decision seems to implicitly refer to an appraiser whom the board has only suspended, such a reading makes sense. However, this suggests that the remaining language in the provision—the language describing a PVD decision that the appraiser "should be terminated"—refers to the PVD's consideration of the other kind of appraiser who elects review, that being the terminated appraiser. This is where we enter into even greater ambiguity, because if a board has already ended the appraiser's employment, salary, and benefits by its termination, it becomes an enigmatic exercise to determine what result a PVD's subsequent termination has on an *already* terminated appraiser.

9

Because this statute is susceptible to different meanings with different effects on our understanding of the word "terminate," we cannot accept the Board's argument that this statute is plain and unambiguous. Thus, we need to turn to our canons of construction and legislative history and any relevant background information to decipher the intended effect of a termination by a board of county commissioners.

*Applicability of* Kennedy v. Board of Shawnee County Comm'rs

Before we turn to our interpretation of K.S.A. 2014 Supp. 19-431, we note this court has previously considered an appraiser's termination under the statute in *Kennedy,* 264 Kan. 776. In *Kennedy*, a board of county commissioners fired a county appraiser without notice and stopped paying his salary and benefits. The PVD upheld the termination. The appraiser sought review of this termination in the district court, arguing that he had been denied due process when the board terminated him without any notice. To avoid a violation of the appraiser's due process rights, the district court concluded that a termination action by a board under K.S.A. 19-431 resulted in only a temporary suspension that did not affect salary or benefits and ordered the county to provide the appraiser with back pay from the time of his termination through the PVD review. When the case came before this court, we affirmed the district court, holding that the board's order of termination was "effective as a suspension with full benefits pending a hearing on the order before the Director," and thus the appraiser had been denied no constitutionally protected property right upon which his due process argument could stand. 264 Kan. at 799-800, 803.

Miller argues that *Kennedy* controls this case and obliges the Board to provide him back pay for the time between his termination and a PVD decision or until the expiration of his term. We do not agree that *Kennedy* controls. Miller's argument here assumes that our holding in *Kennedy* stands for the proposition that K.S.A. 2014 Supp. 19-431 is

unconstitutional if construed any other way than the district court construed it in that case. But, that is not what *Kennedy* stands for. The issue in *Kennedy* was different from the issue here—the appraiser in *Kennedy* contended that the pretermination hearing procedures prescribed in K.S.A. 19-431 did not provide for due process. Because the district court's order had ensured that the *Kennedy* appraiser was deprived of no constitutionally protected right when he was terminated by the board, we held that the lack of a pretermination hearing did not render the statute unconstitutional. We did *not* hold that the immediate deprivation of salary and benefits upon termination by a board would render the statute unconstitutional. Nor did we consider that scenario. Thus, Miller's argument—that *Kennedy* requires that a terminated appraiser receive salary and benefits until the PVD decision in order to render the statute constitutional—is incorrect. Consequently, our previous decision provides no constitutional precedent on which we may rely.

Today, we consider a question that *Kennedy* did not: what power did the legislature intend to vest in a board of county commissioners when it granted it the authority to terminate a county appraiser under K.S.A. 2014 Supp. 19-431? The answer we provide today joins and complements our decision in *Kennedy*, offering additional guidance to counties across the state.

*Statutory Construction of K.S.A. 2014 Supp. 19-431*

To construe the words of K.S.A. 2014 Supp. 19-431, we begin by considering the language and design of the entire statute. See *K Mart Corp. v. Cartier*, *Inc*., 486 U.S. 281, 291, 108 S. Ct. 1811, 100 L. Ed. 2d 313 (1988) (in interpreting a statute, a court must look to "the language and design of the statute as a whole"); *State v. Deffebaugh*, 277 Kan. 720, 728, 89 P.3d 582 (2004) (considering the statute as a whole to aid interpretation). There are three passages in K.S.A. 2014 Supp. 19-431 that shed light on what power the legislature intended to vest in a county board with the word "terminate."

11

First, we consider the statute's reference to any appraiser who sought review of a board's decision as an "appraiser suspended." Because there is no reference to an "appraiser terminated," this language suggests that even an appraiser who was terminated by a county board is considered only suspended when the decision is reviewed by the PVD. That suggestion leads us to understand that a termination by a county board is not a final termination, but one that is conditioned on the PVD's later consistent decision regarding the appraiser's employment status.

The second passage or group of passages of the statute that helps inform our interpretation are the provisions that lay out the PVD's apparent supervisory role. The statute requires the PVD to review a board's decision when the appraiser requests review, to make inquiry into all facts connected with the decision, and then to make its own determination regarding whether the appraiser should be removed permanently. K.S.A. 2014 Supp. 19-431(a). Moreover, K.S.A. 2014 Supp. 19-431(b) also gives the PVD the authority to suspend or terminate the appraiser *without any* initial action, let alone a decision, from a county board. All of this points to a conclusion that a board's decision is not a final decision but rather one subject to review at the option of the appraiser. Of course, if the appraiser does not seek review within 15 days of his or her termination, a board's decision effectively becomes final. In other words, the supervisory role vested in the PVD suggests a county board is not granted any final authority unless the appraiser chooses not to have his or her termination reviewed.

Finally, we find further construction guidance in a third passage of K.S.A. 2014 Supp. 19-431(a) that instructs the PVD to "render an order removing such appraiser" when it decides the appraiser "should be removed permanently . . . or should be terminated." If the appraiser's employment and benefits had already ended by a termination by the board, an additional order of removal from the PVD would be redundant. Because we assume the legislature does not enact meaningless legislation, we

12

cannot assume it meant for this redundancy. This provision thus suggests that the PVD's order of removal actually operates to remove the appraiser, a scenario that requires the appraiser to still be in a position from which he or she can be removed. Consequently, a board's termination must result in something less than removing the appraiser from his or her employment. Because a conditional termination that does not end the appraiser's employment is something less than removing the appraiser from his or her employment, this provision confirms our understanding of a county board's restricted power.

Together, all of the above language shows us that when a county board terminates an appraiser—who then timely seeks review—his or her employment, salary, and benefits are not ended unless and until the PVD decides to terminate the appraiser. Instead, the appraiser is conditionally terminated and the PVD becomes the ultimate decision maker on the appraiser's employment.

While the language of the entire statute, considered as a whole, convinces us that Miller's argument should prevail, we may also turn to one more canon to confirm our construction. This canon provides that statutes dealing with the same subject—those that are in pari materia—should be interpreted harmoniously when possible. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013).

Under this canon, we turn to K.S.A. 79-1404, a statute explaining the "[g]eneral duties and powers of [the] director of property valuation." This statute provides that the PVD's duties, powers, and authorities are "[t]o have and exercise general supervision over . . . the county and district appraisers . . . [and] boards of county commissioners . . . ." K.S.A. 79-1404. If we were to read K.S.A. 2014 Supp. 19-431 as the county urges us to do—in a way that gives a board the authority to sever an appraiser's employment and benefits before the PVD review—we would bring these statutes uncomfortably close to conflicting. If K.S.A. 79-1404 gives the PVD general supervisory powers over the appraiser, it seems contradictory to suggest that K.S.A. 2014

13

Supp. 19-431 gives a county board the authority to remove and stop paying an appraiser without any input from the PVD. If we instead interpret K.S.A. 2014 Supp. 19-431 to give a board the power only to conditionally terminate the appraiser, the statutes operate in harmony, because the PVD remains the final authority on the appraiser's employment.

Available legislative history also confirms our construction of this statute. Since it was enacted in 1907, K.S.A. 19-431 underwent only one round of change significant to this issue. Prior to 1974, the statute was codified at K.S.A. 19-401 and included the following text:

> "Whenever it shall be made to appear to the board of county commissioners of any county by evidence satisfactory to said board that the county assessor of such county has failed or neglected to properly perform the duties of his office, by reasons of incompetency or for any other cause, the board of county commissioners shall enter upon its journal an order *suspending* the county assessor from his office . . . .

> "At the time of the suspension of any county assessor as hereinbefore provided, the board of county commissioners making such *suspension* shall fix the time, not later than ten days thereafter, when a hearing concerning the same may be had by the director of property valuation . . . . At the hearing the director of property valuation shall make careful inquiry as to all facts connected with such *suspension*, and if after said inquiry is made the director of property valuation shall determine that the county assessor so *suspended* shall be removed permanently and his office declared vacated, then the director of property valuation shall make and enter upon the record of his official proceedings an order removing said county assessor . . . ." (Emphasis added.)

This pre-1974 statute was different from today's in two significant ways: It allowed a board to only suspend the county appraiser, with no mention of termination, and it *required* the PVD to hold a hearing; it was not optional. In 1974, the legislature amended the statute to make the PVD review optional at the election of the appraiser and to authorize suspension *or* termination by a board.

14

The House and Senate journals from 1974, the year K.S.A. 19-431 went into effect, provide some insight into the legislators' intent behind the changes. In its original proposed form, the 1974 version of the statute required the PVD to review a suspension and did not include any termination language. K.S.A. 19-401 (1974). As the bill moved through the Senate, it was amended to make the PVD hearing optional. Sen. J. 1974, p. 501; Senate Assessment and Taxation Committee notes, Feb. 26, 1974. After this amendment was approved by the House, the legislature, in a conference committee, amended the statute further to add the termination language. House J. 1974, p. 728.

There are no minutes available from this conference committee meeting; thus we have no record of any discussion that may have occurred before this amendment was approved. However, because the termination language appeared after the legislature decided to make the PVD review optional, reason invites us to accept that the legislature added the language to account for those instances when an appraiser chose not to have his or her termination reviewed. In such a case the appraiser and county board would no longer have to participate in an unnecessary and time-consuming review hearing, and the termination by the board would, in effect, be final; on the other hand, the appraiser who chose to have his or her termination reviewed would still be considered merely suspended. The language in the current statute indicates this understanding when it refers to any appraiser who seeks review as an "appraiser *suspended*." (Emphasis added.) K.S.A. 2014 Supp. 19-431(b).

In sum, our consideration of the legislative history leads us to understand that the legislature did not intend to give a county board the authority to end an appraiser's employment, salary, or benefits. Rather, it meant to give a board suspension power until the PVD could consider the appraiser's employment. By adding the termination language, the legislature made the PVD review optional at the election of the appraiser, thus accounting for the scenario when the appraiser—perhaps for obvious or time-saving

15

reasons—would not seek review. The addition of the termination language resulted in two options for a board: it can suspend or terminate the appraiser, but in either case, the PVD is the only body with authority to end the appraiser's employment, salary, and benefits when an appraiser requests review.

We further note this interpretation results in a statutory scheme that insulates a county appraiser from political pressures, thus ensuring uniformity and integrity across our State's tax valuation system. Miller argues this insulation was the legislature's obvious purpose behind a 1960's reconstruction of our tax valuation system. As we noted in *McManaman v. Board of County Commissioners*, 205 Kan. 118, 126, 468 P.2d 243 (1970), this reconstruction vested "ultimate supervisory responsibility for the administration of the assessment and tax laws of the state squarely on the director of property valuation . . . ." We noted that such a structure works to "enforce the constitutional demand that assessments be uniform and equal in the various counties throughout the State." *McManaman*, 118 Kan. at 126. We conclude that our interpretation today further ensures this uniformity by ensuring that the appraiser is free to perform the duties of the job without threat of the immediate deprivation of salary and benefits at the hands of the county.

When we construe K.S.A. 2014 Supp. 19-431 as a whole, consider statutes regarding the same subject, and look to the legislative history and public policy considerations, we are persuaded that the legislature never intended a board to have the power to end an appraiser's employment, salary, or benefits unless the appraiser does not seek review. Rather, it intended the PVD to wield this authority. We hold that K.S.A. 2014 Supp. 19-431 gives a board of county commissioners the authority only to temporarily relieve an appraiser of his or her duties until the PVD decides termination is appropriate, or the appraiser chooses not to request review within the 15-day time limit prescribed by the statute.

16

In this case, when the Board terminated Miller on March 21, 2011, it did not have the authority to immediately end his employment, salary, or benefits. The only thing the Board had the power to do was temporarily relieve Miller of his duties. Until the PVD ordered Miller removed, he was entitled to his employment and the accompanying salary and benefits. Because the PVD did not order Miller removed until after his term expired, Miller was entitled to his wages and benefits until the expiration of his term, when his property right in his position expired.

Accordingly, the judgment of the Court of Appeals is reversed. The judgment of the district court is vacated, and the case is remanded with an order to determine the amount of back pay owed to Miller. Back pay shall include Miller's salary and benefits from the date that the Board stopped paying his salary through the date Miller's term was set to expire, plus interest.

LUCKERT and ROSEN, JJ., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

BENJAMIN L. BURGESS, District Judge, assigned.[2]

\* \* \*

---

[1]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case No. 111,569 vice Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2]**REPORTER'S NOTE:**  District Judge Burgess was appointed to hear case No. 111,569 vice Justice Luckert under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

JOHNSON, J., concurring: I concur with the majority's holding that, because Miller exercised his statutory right to a hearing before the director of property valuation (Director) who had the ultimate supervisory authority to order Miller's removal as appraiser, Miller was only conditionally terminated—with pay—by the Board of County Commissioners (Board). I write separately to express my view that the hearing before the Director is a de novo proceeding; that the standard of review is unlimited; and that the Director (or the Director's hearing officer) is not required to defer to the Board's decision.

As noted by the majority, K.S.A. 2014 Supp. 19-431(a) provides that, upon receiving an appraiser's request for a hearing, the Director "shall conduct a hearing in accordance with the provisions of the Kansas administrative procedure act [KAPA]." The KAPA provision dealing with hearings more closely describes a de novo trial than a deferential review of an agency's decision, to-wit:

> "To the extent necessary for *full disclosure of all relevant facts and issues*, the presiding officer shall afford to all parties the opportunity to respond, present evidence and argument, conduct cross-examination and submit rebuttal evidence, except as restricted by a limited grant of intervention or by the prehearing order." (Emphasis added.) K.S.A. 77-523(b).

Likewise, K.S.A. 2014 Supp. 19-431(a) specifically mandates that, at the review hearing, the Director "shall make inquiry as to *all facts connected* with such suspension or termination." (Emphasis added.) Pointedly, the Director is not directed to review just the facts upon which the Board relied to make its decision. Obviously, if the Director is presented facts which were not considered by the Board, the Director cannot defer to the Board's weighing or assessment of those facts. By necessity, then, the Director must conduct a de novo, unlimited review of the facts and issues presented at the hearing and make a determination based upon that evidence, without deference to the Board's decision.

18